FACE *v.* HALL.

1. FRAUD—VALUE—FALSITY—OPINION—SALES.

  The general rule that statements as to the value of prop-
  erty are mere matters of opinion and will not give rise
  to an action for fraud, is subject to the exception that
  false statements of the value of property intentionally
  made to one who is in ignorance of the quality and value,
  under such circumstances as indicate a purpose to in-
  duce the party to rely upon them, he having no oppor-
  tunity to examine the subject-matter, may be treated as
  fraudulent.

2. SAME—SALES—EXCHANGE—CONCEALMENT—EQUITY—CANCEL-
LATION.

  Concealment of the fact that a grocery business had been
  unprofitable, in connection with false statements rela-
  tive to the value of the stock of groceries and mer-
  chandise exchanged for other property, and with the
  false representation that the venture had been profitable
  up to a stated time, made by the seller, entitled the buyer
  to bring a suit in equity for cancellation based on the
  fraud, although he had full opportunity to inspect the
  stock which he purchased.

Appeal from Ingham; Collingwood, J. Submitted
June 11, 1913. (Docket No. 75.) Decided November
3, 1913.

Bill by Willard H. Face against Eugene H. Hall,
Clarence M. Hall, and Blanche R. Mott for cancella-
tion of an exchange of property. From a decree for
complainant and in favor of defendant Mott, defend-
ants Hall appeal. Affirmed.

*Samuel H. Rhoads (Cummins & Nichols,* of coun-
sel), for complainant Face.

*Elmer N. Peters,* for defendants Hall.

*Stewart & Sabin,* for defendant Mott.

KUHN, J. The complainant, a resident of the city of Lansing, in February, 1912, desirous of acquiring a business in the city of Charlotte, through the medium of a Mr. Tolbert, a real estate man of the latter place, was introduced to the defendants Eugene H. Hall and Clarence M. Hall, who were the proprietors of a grocery store in that city. After some negotiations, the complainant purchased the property, consisting of a stock of merchandise and fixtures, and paid therefor $7,000. This sum was arrived at by placing a price of $3,500 on the stock of merchandise and $3,500 on the fixtures. The payment was made by complainant turning over to the Halls equities in certain real estate in Lansing at $3,000 and giving $4,000 in notes secured by a chattel mortgage on the stock of merchandise. The defendants Eugene H. Hall and Clarence M. Hall, within a few days after giving up possession of the store, traded the chattel mortgage and notes which they had received from complainant to Frank Mott, acting as agent for his wife, Blanche R. Mott, one of the defendants herein, and received therefor certain real estate in the city of Battle Creek. The complainant, soon after taking possession, became suspicious that he had not received what he supposed he had purchased, had an inventory taken, and found that the stock inventoried at but $1,682.16. He thereupon filed his bill of complaint, alleging fraud and praying that his property be restored to him. The defendant Blanche R. Mott filed an answer and cross-bill, asking for affirmative relief, the restoration to her of her property. Answers were filed by the other defendants. The cause was heard, and thereafter a petition was filed to amend the bill of complaint to conform to certain proofs introduced on the hearing. The amendment was allowed, further proofs were taken, and a decree made granting the relief prayed

for by the complainant and the defendant Blanche R. Mott.

The sole question in this case is whether fraudulent representations were made to the complainant and the defendant Blanche R. Mott by the Halls as to the amount of the stock of merchandise and as to whether the business was a profitable one or not, which were relied upon by them in making the trades.

It is strongly urged by counsel for the defendants Hall that the doctrine of *caveat emptor* applies; that the record discloses that the complainant was a man of considerable business experience, having been in the grocery business before; that he went over the stock several times and was satisfied with the price placed upon it by them, and no representations were made which were not in fact true and based upon their best information.

To determine the issue thus formed necessitates a careful study of the record. It is the claim of the complainant, and he so testified, that the defendants assured him that the stock would inventory at an invoice value of $3,500. The store in question had been purchased by the defendant Eugene H. Hall in April, 1911, and during the following 9 or 10 months several other people became interested in the business, but at the time of the sale to the complainant in February, 1912, the business was owned by the defendants Hall. It is also claimed that they represented to complainant that the business had been a profitable one up to some time in the fall of 1911, when they changed from a credit system to a cash system, which resulted in a loss of patronage. It appears conclusively, however, that the business was an unprofitable venture from the time the Halls took charge of it, and they lost more than $3,000 during the 10 or 11 months they owned the business and were obliged to compromise with their creditors.

Their excuse for not telling Mr. Face, the complainant, about it is stated by the defendant Clarence M. Hall, who testified that he did not think he had to tell him about it and claimed that the question was not asked of either him or his brother.

Mr. Tolbert, the agent, who was a witness for the defendants and who had been a partner for a short time in the firm of Hall Bros., a few months before the sale involved in this controversy took place, frankly stated that the business was losing money too fast to suit him, but when Mr. Face asked him about the business he did not tell him about his experience in the business but turned him over to the defendants Hall to give him the information.

It is claimed that in December, 1911, Frank Mott had a talk with the Halls and they represented to him that the stock and fixtures at that time were worth $8,000. At the time they traded the notes and chattel mortgage, Mr. Mott stated that they told him that the value of the stock had not changed from what it was when they represented it to be worth $8,000 and told him that they had sold it to Mr. Face for $7,000.

It does not seem probable that, if defendants had told complainant the truth about their financial condition, their losses in the business, and the true value of the stock, he would have purchased the stock for the consideration he gave for it. If complainant's testimony is to be believed, the conclusion must be arrived at that the defendants Hall deliberately and intentionally misrepresented the value of their stock and the condition of the business to him in order to make the trade, and these representations were the inducing cause of the trade.

In the case of *Pinch* v. *Hotaling*, 142 Mich. 521, 525 (106 N. W. 69, 70), Mr. Justice MONTGOMERY stated the rule concerning misrepresentations as to value, as follows:

"The contention made is that the statement of value was a mere matter of opinion, and cannot be made the basis of an action for fraud. This is a statement of the general rule, but the rule established by the weight of authority is that false statements of value intentionally made to one who is in ignorance of the quality and value, under circumstances indicating a purpose that such statements are to be relied upon, and where the party to whom they are made has no opportunity to examine the property, may be treated as an affirmation of fact and fraudulent. See 14 Am. & Eng. Enc. Law (2d Ed.), p. 125; *Simar* v. *Canaday,* 53 N. Y. 298 [13 Am. Rep. 523]; *Cressler* v. *Rees,* 27 Neb. 515 [43 N. W. 363, 20 Am. St. Rep. 691]; *Hedin* v. *Surgical Institute,* 35 L. R.. A. 427, note (62 Minn. 146 [64 N. W. 158, 54 Am. St. Rep. 628]); *Collins* v. *Jackson,* 54 Mich. 186 [19 N. W. 947]; *Maxted* v. *Fowler,* 94 Mich. 109 [53 N. W. 921]; 16 Cyc. p. 749."

It is true that if all that were relied upon in this case were simply the representations as to value, in view of the fact that complainant had an opportunity to examine the property and satisfy himself as to the values, it is doubtful if he could obtain the relief prayed for. However, his position is fortified by the representation that the business had been a profitable one, and there was no way for him to disprove it. The excuse made by one of the defendants Hall that he did not consider it necessary for him to tell, would under his own statement bring the case within the doctrine announced in *Fred Macey Co.* v. *Macey,* 143 Mich. 138, 153 (106 N. W. 722, 727, 5 L. R. A. [N. S.] 1036), in which case this court said:

"Fraud may be consummated by suppression of facts and of the truth, as well as by open false assertions. Fraudulent concealment is a matter of equitable jurisdiction as well as fraudulent assertion."

We are satisfied from this record that a fraud has been perpetrated on the complainant and the defend-

ant Blanche R. Mott, and the trial judge properly granted the relief prayed for.

The decree is affirmed, with costs to the complainant and the defendant Blanche R. Mott.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.