FACE *v.* HALL.

1. RECEIVERS—POWERS—CARRYING ON BUSINESS.

Unless the receiver is specially authorized by the court to carry on and conduct a business, he has no authority so to do from an order of the court appointing him to take and preserve property. Hence, a receiver who took charge of and attempted to carry on a grocery business, selling perishable and other portions of the stock, exceeded his authority, which should be measured and limited by the terms of the order of appointment.

**2. SAME—EQUITY—DECREE.**

The usual practice is to require orders of the court of chancery to be in writing. Oral advice or directions of the judge are not a protection to the receiver in exceeding his ordinary authority.

**3. SAME—ADVICE OF COURT.**

A receiver of a grocery stock who took charge of and conducted the business without being properly authorized so to do, was not entitled to justify his action by a showing that he consulted the judge who entered the order of appointment and was directed to proceed to operate the store and business.

**4. APPEAL AND ERROR—LAW OF CASE—STARE DECISIS.**

Having appealed from a decree appointing a receiver, defendants were bound by a decision affirming the order of the lower court and could not object to such appointment on final settlement of the account of the receiver and upon a second appeal.

**5. RECEIVERS—EXCEEDING POWER—SALE OF STOCK.**

Where the receiver conducted the business of an insolvent grocery, having been appointed at the instance of his wife, as complainant, to hold and preserve the property in litigation, and where an order of the court was procured directing such receiver to sell and dispose of the stock and if the bids did not exceed a stated amount to take over and apply the stock on his charges as receiver for managing the business, and where these orders were carried out and the sale made to the receiver for his compensation, it appearing to be impracticable after the lapse of a considerable time during which he disposed of a large part of the stock, to set aside the sale to himself, a decree requiring him to account for the value of the stock, less his reasonable fees for preserving the assets, is entered and such receiver directed and ordered to pay the difference to the appellants.

Appeal from Ingham; Collingwood, J. Submitted June 16, 1914. (Docket No. 79.) Decided October 3, 1914.

Bill by Willard H. Face against Eugene H. Hall and others for an order canceling and setting aside an

exchange of property.  Blanche R. Mott, one of the defendants, filed an answer in the nature of a cross-bill and secured an order for a receiver.  From a decree allowing the final account of Frank H. Mott, receiver, defendants Hall appeal.  Reversed.

*Elmer N. Peters,* for defendants Hall.

*Leland H. Sabin,* for defendant Mott.

STONE, J.  This cause is before us for the second time.  When first here it was disposed of upon its general merits, and will be found reported in 177 Mich. 495 (143 N. W. 622), where a full statement of the facts appears.  The original bill was filed February 23, 1912, and alleged fraud on the part of defendants Hall in the sale by them of a stock of goods at Charlotte to complainant, who gave back to said defendants certain promissory notes secured by chattel mortgage on the stock.  Before the filing of the bill defendants Hall had traded said notes and chattel mortgage to Blanche R. Mott (the latter having acted through her husband and agent, Frank H. Mott) for certain real estate in the city of Battle Creek.  Blanche R. Mott was made a defendant.  She answered, and claimed the benefit of a cross-bill, asking for affirmative relief.  She claimed that she had acted in good faith, and, in case defendants Hall were found to have been guilty of fraudulent conduct, she asked to have her property at Battle Creek restored to her; she offering to transfer to said defendants Hall the said chattel mortgage and notes.  In the original bill complainant had prayed for the appointment of a receiver, but had taken no further steps therein.

On March 4, 1912, Blanche R. Mott filed a petition in said cause, representing that she had purchased said mortgage on said stock; that it consisted of groceries, meats, and other things which usually go with a groc-

ery store, meat market, and bakery, and that much of said stock was perishable; that complainant, after filing his said bill to set aside said sale, had closed said store, locked the doors, and turned over the keys to the sheriff; and that the store was then closed. She represented that said stock, if left in that condition, would depreciate, and much of it would become worthless, and her security would be greatly depreciated; that she was vitally interested in maintaining the value of said property; and that all the parties were more or less interested in maintaining it. She prayed that her husband, Frank H. Mott, be appointed receiver—

"To take possession and charge of the said stock of goods, situated in the city of Charlotte, Mich., and to care for and preserve said business, to the end that said business and property may be preserved for the persons who at the final decree of this court it is determined the same belongs to, and that the usual order appointing a receiver be made herein, with the usual power of receivers."

On March 5, 1912, the court made an order which, after reciting that counsel for defendants waived notice of hearing, of the petition that a receiver be appointed (but not objecting thereto) to take possession and charge of the stock of goods located as above stated, concluded as follows:

"It is ordered, that Frank H. Mott, of the city of Battle Creek, Mich., be and he hereby is appointed a receiver to receive all and singular the said property hereinbefore in a general way described, the same being the property in litigation in this suit, which was sold by said defendants Eugene H. Hall and Clarence M. Hall, to complainant, and which the bill in this cause is filed to set aside, and upon which a chattel mortgage was given by complainant to defendants Eugene H. Hall and Clarence M. Hall, and that Frank H. Mott, before entering upon his duties as such receiver, enter into a bond in the penal sum of $1,500,

with sufficient surety or sureties to be approved of by the register of this court, conditioned for the faithful performance of his duties as such receiver, and that he will be answerable for what he shall receive, and shall dispose of the same as this court shall from time to time direct.

"It is further ordered that the parties to this suit, and each of them, do deliver over to the said Frank H. Mott, as such receiver, all of said property, and that upon such delivery the said Frank H. Mott, as such receiver, make a true and complete inventory and appraisal of all and singular of said property and file the same in the court in this cause.

"It is further ordered that the said receiver shall from time to time make a report to this court of his doings in this behalf, and that he be at liberty to apply to the court for further directions as he may deem necessary."

Said receiver gave the required bond, and seems to have filed with, or shown to the circuit judge an inventory of the stock amounting to $2,034.68.

Upon a subsequent petition of Blanche R. Mott, the court made a further order extending the receivership to include the real estate at Battle Creek which she had transferred to defendants Hall, said receiver to take possession of, collect rents, and pay taxes thereon, etc.

Upon the final hearing of said cause, and on July 22, 1912, the court made a final decree in favor of complainant. It ordered defendants Hall to reconvey certain property which they had obtained from complainant, and ordered the Battle Creek real estate to be reconveyed to defendant Blanche R. Mott, and she was directed to deliver up to complainant the promissory notes, and that the chattel mortgage be delivered up and canceled.

Said decree further provided as follows:

"And it is further ordered, adjudged, and decreed that Frank H. Mott, receiver appointed heretofore in

this cause, make a final report of all his actions and doings as such receiver to this court, and upon settlement of his accounts as such receiver, he to deliver and surrender all of the property in his hands as such receiver to the defendants Hall, upon payment to him of his expenses as such receiver, and his compensation as such receiver hereafter fixed by the court; and that said Frank H. Mott have a lien on such property for such expenses and services."

From this decree defendants Hall appealed, and on November 3, 1913, the decree of the circuit court was affirmed, and the case remanded to the circuit court. The cause having been remanded to the circuit court, an order was entered therein on November 25, 1913, requiring the defendants Hall to show cause on December 2, 1913, why the account of said receiver should not be allowed, and the expenses of said receivership paid by said defendants.

The expenses of receivership, as specified in said order, were as follows: Expenses of receivership, $50; attorney fees, $250; receiver's salary for services, $1,880. At the time this order to show cause was entered no inventory, appraisal, or account of said receiver had ever been filed with the register of the court, nor had any copies thereof been served upon the solicitor for defendants Hall, but, as we understand the record, such papers had been left or filed with the circuit judge at his chambers. On December 2, 1913, an order was entered in said cause allowing in all respects the said account of the receiver, except that the balance of rent collected by said defendants on the Battle Creek property was found to be $263.72, instead of a larger sum, as claimed by the receiver. This order provided that the receiver should sell the grocery stock at public sale on December 12, 1913, and that the proceeds of the sale should be used, first, in payment of the debts contracted by the receiver in the purchase of stock, amounting to $751.30, second,

in the payment of attorney fees, $250, third, in paying the expenses and disbursements of the receiver of $50, and, fourth, in the payment of the receiver's salary of $1,880; that all sums after the payment of the foregoing items should be paid over to defendants Hall, after deducting from such balance the said sum of $263.72, found to be owing by said defendants to such receiver as balance of rents collected as aforesaid; that if the sum realized by the receiver at such sale should not be sufficient to pay all of the sums aforesaid, that the balance remaining unpaid should stand as a decree against said defendants Hall, and that execution might issue therefor.

On December 8, 1913, defendants Hall filed a motion to set aside the order of December 2d, for the reason that the order appointing said receiver did not authorize him to dispose of the property over which the receivership extended, except as the court should from time to time direct, and that no order or decree had ever been entered in said cause authorizing or empowering said receiver to conduct and carry on business with the property over which he was by said order appointed; that said receiver had without authority or right used the said property for the purpose of carrying on a general grocery business, which had been carried on at a great loss; that said receiver had never been authorized to employ counsel, and that his duty as such receiver had never been such as to justify and authorize the employment of counsel, and that all of the acts and doings of said receiver since the entry of said order appointing him such on March 5, 1912, had been unauthorized and illegal.

On December 11, 1913, said motion came on to be heard. Testimony was taken from which it appeared that said receiver, after the filing of his bond and making an inventory, had proceeded to carry on a retail grocery business with said stock, buying new

goods to keep up the stock, and advertised the store as "Mott's Store." In the course of his cross-examination said receiver testified as follows:

"*Q.* You didn't come down here and inform the court that there were perishable goods there that ought to be disposed of?

"*A.* Oh, yes; I informed him of that right on the start.

"*Q.* And you didn't come down here and get an order authorizing you to make a sale of this property?

"*A.* Yes; he told me to.

"*Q.* Well, told you, but did you make an application to this court for an order authorizing you to sell this property, and give the people notice, or did you come out here and see Charles B. Collingwood, and have a talk with him, and he told you what he thought about it, without any person being in court at all?

"*A.* Why, I came to him as the head, under which I was supposed to be working.

"*Q.* Not in court, however?

"*A.* Why, in his chambers.

"*Q.* And there verbally, and without notice to any other person, had some conversation with him?

"*A.* Very short.

"*Q.* What was it?

"*A.* After Mr. Stewart had been here and the order was issued appointing a receiver, I prepared my bond in Battle Creek; and I came up the next day and stepped into Judge Collingwood's office. That was the second time I had ever seen him. I says, 'I have this bond.' He says, 'You file them with the register.' I went into the register's office, and came back in, and he was doing some business. I says, 'Well, what are my duties.' 'Why,' he says, 'you are supposed to go down there and take care of that property.' And I says, 'Well, I desire further and definite instructions.' He says: 'Mr. Mott, I am simply an officer of the court, and I do not run a grocery business; I know nothing about it. You are appointed for that purpose, and you are to go down there and use your very best judgment, keeping absolute and correct account of your doings, so that you will be ready to file them with this court.' He says, 'Keep an accurate account of

your transactions;' and he kind of turned away, and that was all there was to it. He went in to attend to his business, and I went on and took hold of the store, supposing I was to go there, as he specially told me. That was the day I filed my bond and before I had done anything as receiver. * * *

"Q. That is all the authority you have then for your acting, so far as any orders were concerned?

"A. I supposed the full authority was in the order."

The record also shows that on the hearing of the cause in June, 1912, the receiver had testified that the occasion of his going to Charlotte was that he had been appointed to take charge of the Hall Bros. store, to keep it running while the dispute was being settled; that on cross-examination by defendants' counsel he testified that he had been there some time conducting the business as receiver; that, as a matter of fact, he had been selling some of the fixtures.

"Q. Do you propose to go ahead and handle this business as a receiver and do whatever you see fit there, whether it is in the business as a going concern?

"A. I am ready to account for them, and ready to explain it satisfactorily."

"By the Court: Q. And, Mr. Mott, have you been able out of the receipts of the business, besides its running expenses to pay anything on this mortgage?

"A. No, sir; I have had to put up money.

"Q. At the close of this case you will be ready to make a report?

"A. Yes, sir."

On December 18, 1913, an order was made setting aside the sale made on December 12th, by the receiver to Blanche R. Mott; also setting aside that part of the order allowing $250 for solicitor's fees for the receiver, but allowing the account of the receiver in all other respects. This order provided that defendants Hall should pay the receiver his salary of $1,880, his expenses of $50, and compensation from December 2d at the rate of $30 a week, and that, in default of such

payment, the receiver should sell the property in his hands, after not less than three days' notice; and further, "that said receiver may accept bids from any of the parties to this cause, and if said receiver receives no bid in excess of his fees as above named, he may himself take over said property for the amount of his charges and expenses as allowed above;" and further, "that if at said sale there is any surplus over and above fees and expenses of said receiver, such surplus shall be paid over to the defendants Eugene H. Hall and Clarence M. Hall, or to their solicitor."

On January 2, 1914, said receiver took over the stock and property in payment of his receivership fees, salary, and expenses, which taking over and so-called sale was confirmed by an order entered on January 19, 1914.

Defendants Hall have appealed from the orders of December 2d, December 18th, and January 19th, above referred to.

It will be noted that the order appointing the receiver did not purport to confer upon him any authority to carry on the retail grocery business, or, in fact, any business. It appears that the receiver at once, after his appointment, proceeded to conduct a retail grocery business with the stock as a basis, buying additional goods to replace stock sold, and advertising the business as "Mott's Store." It also appears that the business was conducted at a loss, and that finally the whole property was closed out to pay the receiver's expenses.

It appears from the evidence taken at the original hearing, above quoted, that the court and defendants Hall and their solicitor knew what was being done by the receiver. Either party might have applied to the court for an order requiring the receiver to sell the stock and pay the proceeds into court to abide the event of the suit, but nothing of this kind was done.

The defendants Hall took an unsuccessful appeal to this court, thus prolonging the litigation, and knowing what the receiver was doing. Defendants Hall complain that they were not served with papers and were not advised of the doings of the receiver. The evidence is undisputed that they knew that he was carrying on a retail grocery store with the stock.

The whole proceeding was a most unusual and irregular one. The most charitable view which can be taken of it is that neither the court, parties, nor receiver understood the limited scope of the order. It is a well-settled rule that a receiver has no right to carry on and conduct a business, unless he is authorized or directed by the court so to do; and such authority is not derived from an order of appointment to take and preserve the property. 34 Cyc. p. 283, and cases cited; *State Central Sav. Bank* v. *Chain Co.*, 118 Iowa, 698 (92 N. W. 712). In that case it was held that the extent of a receiver's authority is always to be measured by the order of appointment, and such subsequent directions as may from time to time be given. The property is *in custodia legis*, and the receiver acts for the court, as its creature or officer, having no powers save those conferred upon him by its orders, or reasonably to be implied therefrom. It is true that in that case the statute required all orders to be in writing, but we think such statute declaratory of the general practice. In that case, as in this, the receiver claimed that he talked with the judge about the conduct of the business.

In *Terry* v. *Martin*, 7 N. M. 54 (32 Pac. 157), it was held that, in the absence of express authority from the court, a receiver placed in charge of a drug store, pending litigation, had no right to continue the business, and a bill of expenses presented was held properly refused. Many other cases might be cited to the same effect.

The objection to the appointment of the receiver is not available to the defendants Hall now. The decree of the circuit court, affirmed by this court, recognized the appointment and provided for the settlement of his account. It is only with that account that we can now deal.

The receiver was appointed at the instance and in the interest of Blanche R. Mott. It is urged that the store was conducted by the receiver in her sole interest, and that she and her husband, the receiver, have, with the aid of the court, been given the entire property, and that the defendants Hall have been turned out of court empty-handed, in so far as the property involved in the litigation is concerned. We must now take the situation as we find it. It would be impracticable to now set aside the sale. The stock has been in the hands of the receiver, as purchaser, since last January, and probably could not now be identified or followed.

We think the allowance of $1,880 to the receiver an unreasonable one. To look after and protect the stock, getting leave to sell the perishable portion thereof, and collecting the rent and looking after the property in Battle Creek, probably may have been worth $380. We think that all in excess of that sum was unreasonable and inequitable. The sale should not at this late day be disturbed, but a decree should be entered here disallowing $1,500 of the receiver's account for services, and a decree in favor of defendants Hall and against the said receiver for $1,500, to be paid on demand, should be entered, and Blanche R. Mott will pay said defendants their costs of this court to be taxed.

McALVAY, C. J., and KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred. BROOKE, J., did not sit.