POUND v. CLUM.

FRAUD—EXCHANGE OF PROPERTIES—MISREPRESENTATION OF FACT—RESCISSION.
Representations by defendant and his agent, in an exchange of city property for a farm, that defendant's equity in the property was worth $8,200, while in fact it was worth only about $3,650, which representations were relied upon by plaintiffs, who informed defendant and his agent that they were without knowledge of values of city property and would rely upon the representations made, *held*, sufficient to sustain a decree for plaintiffs rescinding the transaction on the ground of fraud.

Appeal from Genesee; Stevens, J. Submitted October 23, 1918. (Docket No. 110.) Decided December 27, 1918.

Bill by James Pound and others against Sherman S. Clum and others to rescind an exchange of real property on the ground of fraud. From a decree for plaintiffs, defendants Clum appeal. Affirmed.

*Otto & Davis* (*Farley & Selby*, of counsel), for plaintiffs.

*George W. Cook*, for appellants.

Plaintiffs were, in December, 1916, the owners of 160 acres of land in Genesee county, Michigan, worth $85 an acre, or a total of $13,600. The farm was subject to mortgages aggregating $3,550. The value of the equity, therefore, was the sum of $10,050. Defendants Clum were at the same time the owners of eight houses and lots in the city of Saginaw. Plaintiff James Pound and his wife Letta Pound, who owned 120 acres of the 160 acres constituting the farm, were farmers and had no knowledge of the values of the Saginaw city property. Plaintiff Grace Chapel, who owned the other 40 acres of the farm, was a school teacher and was likewise ignorant of such values. Being desirous of disposing of the farm, plaintiffs listed the same for sale with one Corrington. The fact that plaintiffs desired to dispose of their farm became known to defendant Sherman S. Clum, who, with his son, examined the place some time in the month of November, 1916, and as a result of such examination proposed an exchange of said farm for his Saginaw property. About December 1st, plaintiff Pound with Corrington went to Saginaw and visited the eight pieces of property, going into seven of them, and spending about eight or ten minutes in each of the seven. Defendant A. O. Heine acted as agent for defendants Clum in the transaction. At the first interview a schedule of the Saginaw property with the values and incumbrances thereon was furnished by Heine to plaintiffs. The schedule follows:

|  |  | Mortgage. |
|---|---|---|
| "559 Stanley St. ................... | $1,800.00 | $722.00 |
| 1505 Holland St. ................ | 3,300.00 | 1,600.00 |
| 1408 Niagara St. ................ | 1,000.00 | 400.00 |
| 1410 Niagara St. ................ | 1,000.00 | 400.00 |
| 219 Perry St. ................... | 1,000.00 | 400.00 |
| 613 Franklin St. |  |  |
| 617 Franklin St. ................ | 5,100.00 | 2,900.00 |
| 435 Howard St. ................. | 2,000.00 | 600.00 |
|  | $15,200.00 | $7,022.00" |

On the 16th day of December a proposition to exchange said properties was made, plaintiffs' property to be taken over at the sum of $13,600 subject to a mortgage of $3,550. Defendants' property to be put in at a valuation of $15,200, subject to mortgages amounting to about $7,000; defendants to pay the sum of $1,850 in cash as difference. The statement of values and equities as shown by Exhibit D follows:

| "Price of city property.$15200.00 | Price of farm.$13600.00 |
|---|---|
| Mortgage ............ 7000.00 | Mortgage .... 3550.00 |
| Equity .............. $8200.00 | Equity ...... $10050.00 |
| Difference due Pound. 1850.00 |  |
| Total ............ $10050.00 | $10050.00" |

Following negotiations and on December 22, 1916, deeds of the several properties were executed by the parties on the basis of the proposition above set forth. The deeds were delivered and the boot money paid over on December 30th, said money having been raised on plaintiffs' farm through a rearrangement of the mortgages and increase thereof. Plaintiffs remained in possession of the farm and defendants Clum remained in possession of the Saginaw property. Following the delivery of the deeds plaintiffs listed the Saginaw property with defendant Heine for sale, but very soon became convinced that they had been defrauded in the transaction and on March 6th filed

their bill of complaint herein seeking a rescission of the transaction, demanding a reconveyance of their farm property to them, and tendering a reconveyance of the Saginaw property to defendants. The bill charges fraud and misrepresentation on the part of the defendants Clum and their agent, Heine. The material allegations of the bill were denied in an answer filed by defendants Clum, and the parties went to a hearing in open court, where much testimony was introduced touching the alleged misrepresentation on the part of the defendants as to the value of the Saginaw property. As a result of the hearing a decree was entered by the terms of which the defendants were ordered to reconvey to the several plaintiffs the farm in question and the plaintiffs were decreed to reconvey to defendants the property received by them and further providing for an adjustment of the money differences between the parties growing out of the transaction. From this decree defendants Clum have appealed.

BROOKE, J. (*after stating the facts*). From a careful perusal of this record, it appears to have been conclusively proven that plaintiffs' equity in the farm in question was actually worth $10,050. By an overwhelming weight of the evidence it appears that defendants' equity in the property exchanged, instead of being the sum of $8,200 as shown by Exhibit A, was in fact about $3,650. As shown by the testimony given by and on behalf of the plaintiffs, the representations made by Clum or by his agent, Heine, were as follows:

"That he could sell them just as quick as he got back. I think the property he referred to was the west side over by Perry and Niagara, for which he said he had buyers. He said he could sell it at a good advance. * * *

" 'Are you positive that the property is worth that

—you can get the money out if I listed them with him?' He said they were worth more and he could get more money than I had in them out of them. * * *

"He said that property cost him more than he was selling them at, they were worth more. *    *    *

"He said it could be readily converted into cash at the price in Exhibit 'A' and perhaps more. *    *    *

"Mr. Heine represented that the property could be readily converted into cash, and that they could be sold for the amount they were listed for. *    *    *

"I heard him tell Mr. Pound that was a fair value for those various properties and that he could sell it upon the market for that price or better; that he could readily convert it into cash for Mr. Pound at that price or better."

It is in evidence that plaintiffs told defendant Clum and his agent, Heine, that they were totally ignorant of the values of the Saginaw property and that they relied upon the representations as to value made:

"I thought they were telling me the facts and relied upon their judgment."

Broadly speaking, the position of defendants is that all the alleged representations as to value amount to mere "puffing"; that plaintiffs were in just as good a position to judge of the value of the property as were defendants and that the case made by plaintiffs upon the record is such that a decree should have been rendered in favor of defendants under the rule of *caveat emptor*. Many Michigan cases are cited in support of the appellants' theory which we find it unnecessary to discuss at large.

The rule as contended for by defendants that where vendor and vendee have equal knowledge or equal means of acquiring information and where nothing is done by the vendor to throw the purchaser off his guard or to divert him from making inquiries and examinations which a prudent man ought to make, and when there is no concealment of facts of which

the vendor has knowledge and of which the vendee is unable to obtain knowledge, mere representations of values are considered as matters of opinion and not of fact, is recognized. The only question here involved is as to the applicability of the rule under the facts in this case. Plaintiffs were absolutely unacquainted with real estate values in the city of Saginaw. They saw the properties in question but three times before the deeds were made and but for a few minutes on each occasion. That they relied upon the representations made by defendants and their agent, Heine, to their injury is not open to question upon this record. We are of opinion that the relief granted is warranted under the following decisions. In *McDonald* v. *Smith*, 139 Mich. 211, it is said, at page 222:

"The rule that expressions of opinion do not constitute actionable fraud (*Myers* v. *Building Ass'n*, 117 Mich. 389; *Chafey* v. *Mathews*, 104 Mich. 103 [27 L. R. A. 558]), which is a rule subject to exceptions (see *French* v. *Ryan*, 104 Mich. 625), 'is applicable only when the opinion stands by itself as a distinct thing.' See *People* v. *Peckens*, 153 N. Y. 593. And it has been said by an eminent jurist:

" 'It is material to observe that it is often fallaciously assumed that a statement of opinion cannot involve the statement of a fact. * * * If the facts are not equally known to both sides, then a statement of opinion by the one who knows the facts best involves very often a statement of a material fact, for he impliedly states that he knows facts which justify his opinion.' Lord Bowen, in *Smith* v. *Land and House Property Corp.*, L. R. 28 Ch. Div. 15."

In the case of *Yanelli* v. *Littlejohn*, 172 Mich. 91, plaintiff had been induced to purchase a farm under representations made by the owner as to the quality of the land and its value. He examined the land and sent his lawyer to investigate the same, who reported the land poor and advised him not to buy. The court there said:

204—Mich.—3.

"A defrauded party does not owe to the party who defrauds him an obligation to use diligence to discover the fraud. *Lewis* v. *Jacobs*, 153 Mich. 664 (117 N. W. 325). It appears that plaintiff did not rely upon the advice and statements of Barassa, the attorney, but acted in disregard of such advice. Had his attorney advised him to purchase the land, and had he relied upon such advice, then the defendant would not have been liable; but the fact that Barassa advised him not to purchase, and that he did not follow the advice, might be urged as evidence of the strength of the representations claimed to have been made by the defendant. The question is not, Was he warned? but, Was he deceived and defrauded by the defendant?"

See, also, *Face* v. *Hall*, 177 Mich. 495. The case of *Pratt* v. *Allegan Circuit Judge*, 177 Mich. 558, is upon its facts very similar to the case at bar. Speaking through Mr. Justice STONE, we there said:

"Can it be said that the language above quoted, that the defendants 'did then and there falsely represent and pretended to, this affiant that the real estate described in said contract was worth $2,100 cash in the real estate market of the city of Kalamazoo, and that the equity in said contract was well worth the sum of $1,225 cash, and that said real estate described in said deed above mentioned was worth the sum of $300 cash in the real estate market of the city of Kalamazoo, and that each of said pieces would readily sell for the sums above named at any time, and that said sums were a fair cash price for said pieces of real estate,' was mere 'seller's talk,' or may it be said to be the representation of facts which might be relied upon by the purchaser and become an inducing cause of the trade? We are of opinion that the representation that property would readily sell in a certain market at a given price is the representation of an alleged fact, and, where relied upon as here stated, may be made the basis of a false representation."

An attempt is made by counsel for appellant to distinguish the *Pratt Case*, but it is asserted that if not distinguishable:

"We are compelled to say that our court has gone farther in its decision of this case than it has in any other adjudicated case in Michigan, and its decision is questionable unless it was intended by the court to lay down a new rule and extend the scope of exceptions to the rule of *caveat emptor.*"

We are of opinion that the cases are not distinguishable and that *Pratt* v. *Allegan Circuit Judge, supra,* is in line with our former decisions.

The decree is affirmed.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, FELLOWS, STONE, and KUHN, JJ., concurred.