HAMMER *v.* MARTIN.

1. FRAUD—VENDOR AND PURCHASER—REPRESENTATIONS—GENERAL RULE—EXCEPTIONS.

It is the general rule, in the sale of land, that if the parties are dealing at arm's length and on equal terms, statements as to value, even when not mere expressions of opinion, cannot be relied upon, and they will not amount to fraud, though known to be false by the party making them, and acted upon by the party to whom they are made; the rule does not apply, however, when there is a relation of trust and confidence between the parties, where the value is peculiarly within the knowledge of the party making the representations, where, from the nature and subject-matter of the transaction, reliance on the representation is clearly expected or intended, or where the other party is prevented from making inquiries which he would otherwise make.

2. SAME—EVIDENCE—SUFFICIENCY.

In an action to set aside, on the ground of fraud, a sale of land on contract, evidence *held*, insufficient to establish fraud.

3. SAME—REPRESENTATION OF MATERIAL FACT—OPINION OF VALUE.

To represent that property could be sold upon the market for a certain price is not a mere expression of opinion, but is the representation of a material fact which could be relied upon in an action based upon fraud.

Appeal from Oakland; Rockwell, J. Submitted January 21, 1919. (Docket No. 69.) Decided April 3, 1919.

Bill by John Hammer and another against Armittie Martin to set aside an exchange of real property on the ground of fraud. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

*Charles Flowers,* for plaintiffs.

*Andrew L. Moore,* for defendant.

See notes in 30 L. R. A. (N. S.) 748; 35 L. R. A. (N. S.) 175; L. R. A. 1916F, 782.

KUHN, J. The bill of complaint in this case seeks to set aside, on the ground of fraudulent misrepresentations, a certain real estate transaction wherein the plaintiffs purchased from the defendant, on land contract, an 80-acre farm in the township of Commerce, Oakland county, and turned in as the initial payment thereon their equity in a certain lot in the city of Detroit, assigning the land contract for the latter to the defendant. The allegations as to fraud are as follows:

"2. The preliminary negotiations between the parties which culminated in the execution of said contract, were had between the plaintiff, John Hammer, and the defendant, and the said plaintiff relied solely upon the claims, representations and warranties of the defendant as to the value and quality and location of said land, and he purchased the same with the intention of making it a home for himself and his family and spending the remaining years of his life there, and the said farm was not bought by him for speculation or with a view of making profits by resale of the same.

"3. The plaintiff, John Hammer, is about sixty years of age. He had been engaged in Detroit a large portion of his life as a carpenter, and had no experience in farming, and had no actual knowledge of the quality and value of farming lands. The defendant made to him the following representations: That the land was worth at least ten thousand dollars, or one hundred and twenty-five dollars per acre; that it was the best farm in the neighborhood; that property in the immediate vicinity, which was not of as great value, had lately been sold for two hundred dollars per acre; that the farm was three-quarters of a mile from Walled Lake, and not more than three-quarters of a mile from Walled Lake village; that it was less than three miles from the interurban railway; that the soil was of fine value, and she gave him samples of said soil, which she claimed was the average quality of the soil of the entire farm; that she had owned the farm for more than a year and well knew its value; that her intention had been to lease the farm and to

spend the week ends there. The plaintiff seemed to be fascinated by her frankness and honesty, and it was solely upon her said representations that he was induced to enter into the said contract.

"4. And the plaintiffs show unto the court: That the said farm, instead of being worth ten thousand dollars, is worth not to exceed four thousand dollars, and not more than fifty dollars per acre; that the property referred to by her as having been sold for two hundred dollars per acre was sold for only seventy dollars per acre, and it was of far greater value than the land in question; that instead of being but three-quarters of a mile from Walled Lake, it is at least two miles and a half from said lake; that instead of being three-quarters of a mile from Walled Lake village, it is at least two and a half miles from said village; that instead of being but three miles from the interurban railway, it is at least five miles from said railway; that the samples of soil that she gave him as being the average soil of the farm were taken from the garden, from the orchard and from the bottom lands by the creek; that instead of her having owned the property for more than a year, she had bought it upon the fifth day of May, 1917, and as your orator is informed and believes, she had paid not more than fifty dollars per acre for it; that at the time she bought said property it was subject to two mortgages aggregating twelve hundred dollars; that upon said fifth day of May she executed a third mortgage for two hundred and fifty dollars, making the total amount of the incumbrance upon the property of fourteen hundred and fifty dollars, and plaintiffs charge that the said property is now incumbered to the limit that it will stand, and they believe the real value of said land is not more than double the incumbrance."

After hearing the testimony, the trial judge made the following findings:

"The plaintiff, John Hammer, resided in Detroit, is about 60 years of age and a carpenter by occupation, at which occupation he has worked the greater portion of his life at the city of Detroit, but had no practical knowledge of farming. The defendant resides in the city of Pontiac, was the owner of the farm

in question and deals in real estate. The testimony discloses that the plaintiff John Hammer's attention was attracted to this farm by an advertisement of a farm for sale of 80 acres in Oakland county. That he called at 17 Baker street, Detroit, the home of defendant's brother, where he talked with the defendant, the owner of the farm, and she invited him to go out with her and see the farm for himself. That on the Wednesday following, being Decoration Day, he came to Pontiac, where the defendant met him and took him with her automobile, together with a Mr. Beardsley, who was assisting her with the sale of the farm, to the farm in question, where they looked the place over, at which time the plaintiff selected samples of the soil and put them in envelopes and took them back to Detroit with him. Plaintiff stated that he had looked at a farm in the township of Orion, with a view of buying, but that he liked the farm in question much better and if he had the money he would buy it that day. That they then drove to the village of Walled Lake, which is situated some few miles from the farm in question, and then drove back to the city of Pontiac, crossing the interurban railway, which is referred to in the bill of complaint. That on the following day plaintiff's two sons arranged to inspect the farm and met the defendant at a station on the Detroit and Pontiac electric line called Circle, about four miles south of Pontiac, where she took them in her automobile to the farm, at which time they inspected it, returning to the city of Pontiac by way of Walled Lake village, the same route their father had taken on the preceding day. On the following day, which was Friday, June 1st, plaintiff came to Pontiac and went to the Oakland County Savings Bank, where he talked with Mr. Frank L. Perry, cashier, regarding the farm. That he secured from him the abstract to the title of the farm and returned with it to the city of Detroit. That he arranged with Mrs. Martin to come to the city of Detroit and go with him to his attorney's office on Gratiot avenue on Saturday, June 2d, where the papers could be drawn and the deal completed. Mrs. Martin kept the appointment. The plaintiff, his wife and adult son, called at the attorney's office with her. The deal was talked

over, the details agreed upon, but the attorney did not have time to prepare the papers on that day and it was agreed that he would prepare them over Sunday and that the plaintiff and his wife would come to Pontiac on the following Monday and the deal could be closed. In the meantime, on the Sunday following, before any papers had been drawn and the deal closed, plaintiff's sons again came to Pontiac and were taken to the farm, made some arrangements for putting in crops, staked out certain fields, examined the farm further and decided what portion of it they would crop, and returned to Detroit. The following day, Monday, at 1 o'clock, plaintiffs came to Pontiac with the contracts drawn that he now seeks to avoid, ready for execution, and which were prepared by plaintiffs' attorney. The parties then went to the Oakland County Savings Bank, where the papers were signed and acknowledged and delivered in the presence of some officers of the bank. Thereafter plaintiffs went into possession of the farm, causing certain lands to be cultivated, and planted some crops. A number of days afterwards it appears he talked with some of the neighbors who advised him that he had paid too much for the farm and that he would have some trouble in making a living off from it. As shown by the land contract in question it was sold for $10,000 on terms, the first payment was made by taking a lot of the plaintiffs for $1,880, for which plaintiffs had origi-- nally paid $465. The remaining $8,120 was to be paid for at different periods, with the privilege of discounting the same $500, provided $4,500 of the same was paid within six months from the date of the contract. It appears that the farm is not as productive as some farms, however, some time prior to the sale of this farm, small tracts of land with improvements have been sold in this neighborhood for as high as $150 an acre.

"I am satisfied that the price plaintiffs contracted to pay for the farm was in excess of its real value. However, in view of the fact that plaintiffs and members of their family had ample opportunity to investigate the farm, which they evidently did, and make inquiries concerning its value, which they had ample opportunity to do, that it cannot be said that there

was fraud practiced on the part of the defendant. While it appears to be a well settled rule of law in Michigan that deeds may be set aside on the ground of fraud, nevertheless it is equally a well settled rule of law that where the purchaser takes upon himself, as he did in this case, the responsibility of investigating the property, he was bound to rely, to some extent at least upon his own judgment. It appears that there was nothing done to prevent him from making full investigation as to its location, character and value.

"It is not the province of courts to make or unmake contracts for parties, and their province is to interfere only when they are satisfied that fraud has been practiced.

"I am not prepared to say that defendant's statements incident to the sale, coupled with plaintiffs' means and opportunities of making a complete investigation, which was not hampered in any way, amounted to fraud.

"Bill is therefore dismissed, with costs to the defendant. Decree so ordered."

We think the case was rightly decided. We are inclined to agree with the statement in the brief of defendant's counsel, that:

"A careful reading of plaintiffs' brief, of the bill of complaint and the facts set forth in the record, clearly indicates that plaintiffs place their entire case upon the single question that defendant, falsely and fraudulently, misrepresented the value of the property, and that such misrepresentation was a misrepresentation of a material fact and that they were deceived thereby and defrauded."

Indeed, plaintiffs' counsel states in his brief:

"The real question in the case is whether the farm was worth ten thousand dollars, for the plaintiffs bought it of the defendant upon her representation that it was worth ten thousand dollars."

The general rule with reference to representations as to value is thus stated in 14 Am. & Eng. Enc. Law (2d Ed.), p. 124:

"It is no doubt agreed that, as a general rule, if parties are dealing at arm's length and on equal terms, statements as to value made by one to the other, even when not mere expressions of opinion, cannot be relied upon; and that they will not amount to fraud, though known to be false by the party making them, and acted upon by the party to whom they are made"—citing *Bristol* v. *Braidwood*, 28 Mich. 191; *Allison* v. *Ward*, 63 Mich. 128; *Walker* v. *Casgrain*, 101 Mich. 604.

On page 125 of the same volume the following is stated as an exception to the general rule:

"The rule does not apply, however, when there is a relation of trust and confidence between the parties, nor generally when they are not dealing on equal terms, as where the value is, or is represented and believed to be, peculiarly within the knowledge, or means of knowledge, of the party making the representation, or in any other case where, from the nature and subject-matter of the transaction, reliance on the representation is clearly expected or intended. * * * Nor does the rule apply where, by the artifice and fraud of the party making the representation the other party is prevented from making inquiries which he would otherwise make,"—citing *Picard* v. *McCormick,* 11 Mich. 68; *Kost* v. *Bender*, 25 Mich. 515; *Nowlin* v. *Snow*, 40 Mich. 699.

This rule and exception are thus referred to in *Pinch* v. *Hotaling*, 142 Mich. 521, at page 525:

"The contention is made that the statement of value was a mere matter of opinion, and cannot be made the basis of an action for fraud. This is a statement of the general rule, but the rule established by the weight of authority is that false statements of value intentionally made to one who is in ignorance of the quality and value, under circumstances indicating a purpose that such statements are to be relied upon, and where the party to whom they are made has no opportunity to examine the property, may be treated as an affirmation of fact and fraudulent,"—citing *Collins* v. *Jackson*, 54 Mich. 186; *Maxted* v. *Fowler*, 94 Mich. 109; 16 Cyc. p. 749; 14 Am. & Eng. Enc. Law (2d Ed.), p. 125.

Upon a careful examination of the record in this case, we are convinced that plaintiffs have failed to establish a case within the scope of the exception to the general rule.

In the recent cases of *Pound* v. *Clum*, 204 Mich. 28, and *Pratt* v. *Allegan Circuit Judge*, 177 Mich. 558, upon which the decision in the former case was based, the representations were that the property could be sold upon the market for a certain price, and it was upon this representation that the vendees relied. The court properly held that such a representation was a representation of a material fact, the falsity of which could be relied upon in an action of this kind. It must be clear that to express an opinion that a property is worth a certain amount is different from saying that the market value of that property is a certain amount. The first would be merely the expression of an opinion, which might be well founded or not, while the latter would not be the expression of an opinion, but the statement of a fact. This, in our opinion, clearly distinguishes these cases from the one now before us. There is also nothing to indicate that Mr. Hammer gave Mrs. Martin to understand that he was relying on her statements as to value or that he regarded her as an authority on the value of property in that vicinity, which, in our opinion, also distinguishes the case from *Pound* v. *Clum, supra,* where it was said:

"It is in evidence that plaintiffs told defendant Clum and his agent, Heine, that they were totally ignorant of the values of the Saginaw property, and that they relied upon the representations as to value made."

Mr. Hammer understood that he was dealing with the owner of the property, not an agent. Before the transaction was closed, he had the abstract of title, from which, presumably, he might have learned that Mrs. Martin had owned the property but a short time.

Whether or not it disclosed the consideration paid by her on her purchase of the farm does not appear. He seems to have been given every opportunity to inspect the property as often and as thoroughly as he saw fit. Had he desired, he might, prior to his purchase, have made inquiries as to the general nature and value of farm property in that vicinity, as well as of that farm in particular, from the same neighbors who afterwards volunteered the discouraging information which led to this proceeding. The fact seems to stand out clearly that he was so well pleased with the partial survey of the premises which he personally made on his first visit that he did not care to take the time to make a further inspection, but announced himself as willing to buy it on the spot, if he had had the ready money. The plaintiffs have not met the burden of establishing fraud, and the decree dismissing the bill of complaint is therefore affirmed.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred.