MARTIN *v.* CRITTON.

1. EQUITY—JURISDICTION—EXCHANGE OF PROPERTIES—FRAUD.
   In a suit to enjoin defendants from dispossessing plaintiffs, on a writ of restitution, of a farm received in exchange from defendants, in the payments on which plaintiffs had defaulted, and to set aside said exchange on the ground of fraud, defendants' contention that the court was without jurisdiction to entertain the proceeding, *held*, answered adversely by what was done in the case of *Gregor* v. *Olde*, 209 Mich. 43.

2. FRAUD—EXCHANGE OF PROPERTIES—EVIDENCE—SUFFICIENCY.
   Evidence as to misrepresentation of the value of the farm, the character of the soil, and the condition of the orchards and vineyard which induced plaintiffs to part with their business in exchange therefor, *held*, to justify a finding that defendants were guilty of fraud.

Appeal from Van Buren; Des Voignes (L. Burget), J. Submitted June 10, 1920. (Docket No. 39.) Decided September 30, 1920.

Bill by Martin A. Martin and another against Glen W. Critton and another to enjoin an action at law, and to set aside an exchange of property for fraud. From the decree rendered, all parties appeal. Affirmed.

*Thomas J. Cavanaugh,* for plaintiffs.

*W. J. Barnard,* for defendants.

MOORE, C. J.   On the 20th day of September, 1917, the plaintiffs were owners of a stock of furniture which was in a leased store at 2929 Woodward avenue, Detroit.   Glen W. Critton, the defendant, was the owner of 160 acres of land in Antwerp township, Van Buren county, Michigan.   On the 20th day of September, 1917, plaintiffs exchanged their stock of goods for the 160 acres of land and certain tools, implements and stock which were on the farm and entered into a written contract whereby they were to make other payments.   The defendants reserved the right to remove the east tenant house and the barn known as the hay barn; plaintiffs were to pay $1,000 on or before October 1, 1917, $1,800 on or before 90 days from September 20, 1917, at which time defendants were to convey the lands by deed, taking back a mortgage for $7,000.   Plaintiffs took possession of the farm and the personal property.   Defendants took over the stock of goods and a sub-lease of the premises. Plaintiffs defaulted in their payment of $1,000 due October 1, 1917, and on the $1,800 payment due December 20, 1917.   January 23, 1918, defendants caused to be served upon plaintiffs a notice of forfeiture.   February 27, 1918, defendants instituted a summary proceeding at law, before a circuit court commissioner at Paw Paw, to obtain possession of the premises.   Summons was served on the Martins in Detroit.   The case was heard March 1st.   The Mar-

tins did not appear and judgment for restitution of the premises was awarded Critton.

On the 2d day of April, 1918, the plaintiffs filed this bill. They allege fraud and misrepresentations made by defendants in the exchange of property and charge collusion by defendant and his brother and their agents to cheat and defraud them; that Mr. Watson, the agent of defendants, told Mr. Martin the farm had a vineyard of 20 acres, an apple orchard of 20 acres, a pear orchard of 7 acres; that the owner asked $26,000 for the same; that after one or two interviews the defendant Glen W. Critton told him the farm was located in the Michigan fruit belt; that as soon as the Dixie Highway was built the land would be worth $250 an acre; that the 20 acres of grapes were well worth what he was asking for the farm; that the previous year the vineyard produced 50 tons of grapes and that they brought $50 a ton; that the 7 acres of young pear trees were all in bearing; that there was an apple orchard of 20 acres, young and healthy and all bearing; that the apple orchard alone was worth $9,000; that the soil was sandy loam, with clay bottom sub-soil; that for the 3 acres across the road from the buildings he was offered $500 an acre, and that he would not sell it; that he was asking $26,000 for the farm and stock and implements, but would be willing to take $25,000.

It is further alleged that Mr. Martin told Mr. Critton that he knew nothing about farming or fruit; that he would rely on him as an Odd Fellow to do the square thing. That in all that was done the plaintiff relied on the representations of defendant and his agents; that he was ignorant of land values or the condition, cultivation and requirements for the production of fruit and its value; that defendant led him to believe that he could easily make his payments from the income from the farm and could easily se-

cure a loan to satisfy the balance he was owing on the purchase price; that when the payments became due, he having no other means to make such payments, only by security on the place which defendant knew, he sought to secure a loan on the land and then learned that it was poor land, such land that no one cared to take as security for a loan for the balance due on the contract.

Upon the filing of this bill a temporary injunction was made by the court restraining defendants from dispossessing plaintiffs on the writ of restitution for which judgment was taken in March, 1918. The defendants answered the bill of complaint denying every act of wrongdoing and averred that the plaintiff visited the premises twice; that he could see and determine for himself what the land, the orchard, the vineyard and all its appurtenances were, and that the plaintiffs acted on their own judgment; that they took possession of the premises and received for the crop of grapes alone nearly $2,100; that Mr. Martin shipped beans and potatoes to Detroit, sold pears in the market, and that the farm was well worth with the stock and tools he turned over $18,000 in cash and $25,000 on an exchange basis. The proofs were taken in open court, the taking of the testimony covering a period of four days. The trial judge was of the opinion that the land and personal property conveyed to the plaintiffs was worth not more than $7,000, and that the stock of goods exclusive of the 3 years' lease which was sublet to the defendants was worth $4,000.

A decree was made from which we quote:

"On motion of Thomas J. Cavanaugh it is ordered, adjudged and decreed and this court by virtue of the authority therein vested doth order, adjudge and decree that the allegations of the bill of complaint have been sustained and that the defendant shall pay or cause to be paid to the plaintiffs or their attorney, the sum of $4,000 within thirty days from this date,

and in consideration thereof the said plaintiffs shall quit, surrender and deliver up possession of said farm to the said Glen W. Critton, including the contract of sale and such of the personal property mentioned and described in said contract as is now on said farm.

"Should the said defendant fail to pay to the said plaintiffs within the time above limited said sum then the said plaintiffs may continue to remain in operation and control of said lands and all of the other property described in the contract upon payment to the said Glen W. Critton of the sum of three thousand dollars in which event the said Glen W. Critton is hereby directed to convey to said plaintiffs or to such other person or persons as they shall direct said premises by a good and sufficient warranty deed free and clear from all encumbrances whatsoever, and if for any reason the defendant should fail so to do then upon the payment of said $3,000 the plaintiffs may record this decree which shall be effective to convey to plaintiffs title to said lands.  Under this latter clause of the decree the defendant is given the right to remove the tenant house and hay barn from the land as reserved in the land contract, at any time within six months from this date."

This decree suited neither of the parties and both plaintiffs and defendants have appealed.  It is the claim of the plaintiffs that they have fully proven the averments of the bill and that the stock of furniture, good will of the business and the lease were worth fully as much as the farm, and that it should be decreed to be theirs without any further payments by them, inasmuch as the parties cannot be placed *in statu quo*.

Counsel for defendants quotes section 790 Cummins and Beecher's Judicature Act (3 Comp. Laws 1915, § 12667) and contend that the court was without jurisdiction to entertain this proceeding without first requiring plaintiffs to give the bond mentioned in the section quoted.  We think this contention is answered by what was done in the case of *Gregor v. Olde*, 209 Mich. 43.

The important question raised by counsel for defendants may be gathered by excerpts from his brief as follows:

"It is our contention that this was an exchange of properties, and that both plaintiffs and defendants exaggerated the value of their properties in said exchange, in fact, the plaintiffs committed an actual fraud, wilfully and intentionally. * * *

"This court has repeatedly held that they will not balance equities between parties where both are in the wrong, nor give the plaintiff relief against his own vice and folly. *Rozell* v. *Redding,* 59 Mich. 338."

This contention is based upon the claim that an inventory made by Mrs. Martin was padded and that the debts against the stock were misrepresented. The inventory mentioned was not made until after the contract was made and when the list of creditors was furnished it was not untrue.

A reading of the opinion in the case cited by counsel will show it is easily distinguishable from the instant case. It may be well here to recall some of the testimony. We quote from a witness who had known the farm 12 years and who was supervisor of the township in 1917.

"Well, there are trees in the orchard, at a hasty examination, that look pretty good. There are other trees that are very badly peppered with scale. There are a good many trees where the water-sprouts have not been trimmed for so long that the water-sprouts are in some places higher than the trees; grown up through the bottom right through the trees. They have not been trimmed for some time. There is a few trees back in the center of the orchard that have been trimmed some time past but they are well healed over and I would say it had been some few years since they had been trimmed at all from any evidence that I could see. There is a few trees that is cleaned out and they look better than the rest of them. These water-sprouts must have been growing for several years; two or three years, anyway. I would say the apple orchard

was at least 12 years old, anyway. I saw the pear orchard; I didn't think the pear orchard was in as good shape as the apple orchard. It seems to be neglected and the bark was in bad shape and the twigs were brittle on the end to the few trees I touched. I thought the pear orchard was in very bad shape. The vineyard has not been properly trimmed. The wood on there, I would say, was two years old. There was some sassafras growing there six or seven feet tall and a few oak grubs. The soil is sandy.

"*Q.* Was there any clay sub-soil?

"*A.* I don't know.

"*Q.* What sort of sand?

"*A.* Yellow sand. That is the greater portion of it, and there is some blow sand, I would say, from where I looked at it. I observed the buildings just as we went by them. I am acquainted with the value of lands in that community. The fair market value of this farm in the fall of 1917 was about $4,000 this 160 acres, including buildings."

There were a number of other witnesses who lived near the farm whose testimony was substantially the same.

We now quote in part from the testimony of defendant Glen Critton:

"I am acquainted with the value of farming land in and through the State of Michigan, and a fair cash value of that farm traded Martin in September, 1917, was $18,000, and a fair exchange value on trade was $25,000. There was very few apples that year on the farm I traded. There was a lot of pears. I did not tell Martin at any time that this land was worth $250 an acre when the Dixie Highway went through. I did not tell him that the year before the vineyard produced 50 tons of grapes and brought $50 a ton; I did not tell him that the apple orchard was worth $9,000 alone; I did not tell him that the persons who had previously occupied the farm had made money there; I did not tell him I had been offered $500 an acre for the three acres across the road; no, sir."

His testimony as to values is not sustained by that

of any other witness and notwithstanding his testimony that he did not make the statements as to the orchards and vineyard as sworn to by the witnesses for the plaintiffs, it goes to show the probabilities of his having made those statements for it is difficult to see how the value of the farm could be fixed at $18,000 unless the orchards and vineyard were in fine condition as the witnesses for the plaintiffs say he represented them to be.

Much stress is laid by counsel upon the testimony of two building contractors who place the value of the buildings at over $9,000. On the cross-examination they testified:

"I place the value on the buildings as buildings, regardless of their surroundings, neither did I consider that it made any difference where the buildings were located, so that my figures were based on the value of the buildings whether located in the country or in a village or in a city."

The undisputed testimony is that many of these buildings were put up as shelter for sheep, cattle and other stock which were fed by grain and fodder that were brought from another large farm owned by the person putting up the buildings. The testimony is that their value on a fruit farm would be negligible.

It would profit no one to go over the testimony in detail. It is impossible to read the record without reaching the conclusion that representations were made as to the value of the farm, the character of the soil and the condition of the orchards and vineyard which induced the plaintiffs to part with their business in Detroit, and that the statements were not true. We think the case is within the reasoning of *Smith* v. *Werkheiser*, 152 Mich. 177 (15 L. R. A. [N. S.] 1092) ; *Yanelli* v. *Littlejohn*, 172 Mich. 91; *Face* v. *Hall*, 177 Mich. 495; *Merlau* v. *Kalamazoo Circuit Judge*, 180

211—Mich.—33.

Mich. 393; *Haener* v. *McKenzie*, 188 Mich. 27, and the many cases cited therein; *Pound* v. *Clum*, 204 Mich. 28.

The decree of the lower court is affirmed. As both parties have appealed, no costs will be given in this court.

STEERE, BROOKE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.