## HOARD *v.* VANDECAR.

1. FRAUD—EXCHANGE OF PROPERTY—RESCISSION—EVIDENCE—SUFFICIENCY.

In a suit for the rescission of a contract for an exchange of property, plaintiff's claim of fraud in that defendants misrepresented to her the value of the property which she received, and also the rentals received therefrom, *held,* not established by the proof.[1]

2. SAME—FRAUD NOT ESTABLISHED BY PROOF.

Plaintiff's claim that the building which she received was out of repair, and that its condition was fraudulently concealed from her, *held,* not established by the proof,

---

[1]Exchange of Property, 23 C. J. § 95.
On right to rely upon representations made to effect contract as a basis for a charge of fraud, see note in 37 L. R. A. 593.

which shows that she visited the property twice before making the deal, that she had every opportunity to examine it, and that she saw some of the conditions of which she now complains.[2]

3. Pleading—Amendment of Bill After Proofs Closed Properly Denied—Discretion of Court.

There was no abuse of discretion in the action of the trial court in denying a petition for leave to amend the bill and permit additional proof in support thereof, after the proofs were closed, on the ground that plaintiff had failed to inform her attorneys of the additional grounds of fraud when they drew up the bill of complaint.[3]

Appeal from superior court of Grand Rapids; Verdier (Leonard D.), J. Submitted October 13, 1925. (Docket No. 60.) Decided December 22, 1925.

Bill by Elizabeth R. Hoard against Edward Vandecar and others to set aside an exchange of real estate on the ground of fraud. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Arthur F. Shaw* and *Dorr Kuizema*, for plaintiff.

*Frank I. Blake* (*Jay W. Linsey*, of counsel), for defendants.

Sharpe, J. On March 31, 1924, plaintiff assigned her equity in two houses and lots which she had purchased under land contracts to the defendants Vandecar, and received therefor a contract to purchase a three-story brick veneer block and a two-family house in the rear thereof, all of the property being in the city of Grand Rapids. The contract price of the block and house was fixed at $20,000, on which $8,000 was credited for the assignments. She took possession at once. On May 10th, she served notice of

[2]Exchange of Property, 23 C. J. § 95; [3]Pleading, 31 Cyc. p. 402.

rescission, tendered the contract she had received, and demanded a re-assignment of her contracts. On defendants' refusal to comply with this demand, she filed this bill on May 15th, alleging that she had been defrauded by the misrepresentations made to her as to the value, the rents received, and the condition of the premises purchased by her, and praying that the contract with the defendants be voided and her property restored to her. She appeals to this court from a decree dismissing her bill of complaint.

· The defendant Reyburn, who handled real estate on commission as a side line, noticed a "For Sale" sign on the house in which plaintiff then lived. He called and asked her to list her property with him. The next day he again called and induced her to go with him and look over the Vandecar property, a listing of which he had in the meantime procured. The brick block had two stores on the ground floor and eleven small apartments above. The dwelling house was at times occupied by two, and at times by four tenants. She was shown the first floor and basement. She did not see all of the rooms above, as some of them were locked. She testified:

"When I went there with Mr. Reyburn I could look around the second floor. I could see it was dirty. I could see it needed papering. I knew it needed papering at the time I bought it. I have papered houses. I would buy property that was sort of run down, make some repairs on it, and then resell it. I have been doing that a lot. That is the way I made my money. I had some experience in redecorating and remodeling when I bought this property. I knew that there was plaster board on the third floor before I bought it. Mr. Reyburn suggested that to put a skylight in the hall would be the proper thing to do. I don't remember saying that I would take out the partitions and put in permanent ones. I spoke that alterations could be made on the third floor par-

ticularly. It ought to be done in order to make it a better proposition."

A few days later, she again visited the property, accompanied by Reyburn and her son-in-law, Mr. Thomas, who had had considerable experience in real estate transactions. She was then permitted to enter several of the apartments which were closed on her first visit. Vandecar soon after looked over her property, and offered to exchange on the terms stated above. The deal was closed a day or two later. One-half of the commission charged by Reyburn was paid by plaintiff.

1. Value. Plaintiff averred in her bill, and testified, that the defendants represented to her that the Vandecar property "was well worth the sum of $20,000;" that the Vandecars had paid $20,000 for it "by means of their farm turned in" for it, and that it could easily be sold for $24,000 or $25,000. Reyburn denied that he told her "it was worth $20,000. I told her Mr. Vandecar held it at $20,000." Vandecar testified that he said to her that he "had paid at least $20,000 for it;" that he had taken it in exchange for an unincumbered 120-acre farm and the personalty thereon, on which he was at that time living, assuming a mortgage on it for $6,400, and "figured that I was paying a good round $20,000 for it in actual value;" that he had had offers of that sum in deals for other farms. Mr. Warner, with whom Vandecar traded in 1922, testified: "I figured I was getting about $23,000 or $24,000" for the property. Several real estate men, called by plaintiff, fixed its value at from $10,000 to $15,000, while others, called by defendants, testified that its fair market value was $20,000. The plaintiff and Vandecar were dealing at arm's length. On the proof submitted, we are satisfied that plaintiff did not make out a case for

relief in this respect.    *Hammer* v. *Martin*, 205 Mich.
359; *Furman* v. *Brown*, 227 Mich. 629.

2. Rentals.    Plaintiff testified that Reyburn told her
the rentals of the Vandecar property were "$290 a
month or somewhere along there;" that Vandecar said
"he was getting $270 or $290, somewhere along there,
a month."    Thomas testified that Reyburn said the
rental was "something like $290."    Reyburn testi-
fied that he told her "the rent was approximately $240
per month."    Vandecar testified that he "told her
what it was bringing exact at the time she was talk-
ing with me."    The rent received averaged about
$250 per month.    The representation as stated by
plaintiff in her sworn bill of complaint was that the
rents "would amount to about $250 a month."
Clearly, no misrepresentation in this respect was es-
tablished.

3. Condition of the Property.    Plaintiff further
claims that the roof leaked, that the plumbing had been
condemned, that the plaster "is very badly cracked
and will need replacement," and that these and other
evidences of want of repair were concealed from her
by the defendants, and that some of the tenants moved
out on that account.    She had every opportunity to
examine the property.    She admits in her testimony
that she saw some of the things of which she now
complains.    It is apparent that these apartments were
not in a good state of repair.    The stores below
rented for $60 per month, leaving but about $200 for
the rental of the eleven apartments in the block and
the two in the residence in the rear.    We are im-
pressed that plaintiff was herself to blame for the
tenants moving out.    She insisted on turning off the
light in the hall and toilets, and found fault about
the quantity of water being used.    She incumbered
the halls and toilets with her furniture, and insisted
on raising some of the rents.    She testified that she

had "quite a little experience in handling and dealing with houses and lots.   *   *   *    I would buy property that was sort of run down, make some repairs on it and then resell it.    I have been doing that a lot. That is the way I made my money."    The exchange of property may not have been advantageous to her, but the record fails to disclose any such fraudulent representations as justified its rescission.

The proofs were closed on August 22, 1924.    On the 26th, defendants tendered a proposed decree.    On September 4th, plaintiff petitioned for leave to amend her bill of complaint by alleging a misrepresentation as to a special assessment for taxes to be thereafter levied on the property, and a further misrepresentation that the building was of solid brick construction, whereas in fact it was but veneered with brick, and that she be permitted to submit additional proof in support thereof.    It is said in the petition that "plaintiff failed to inform her attorneys that she had this other ground of fraud when they drew up her bill of complaint."    There was no abuse of discretion in the action of the trial court in denying this application.    *Prochaska* v. *Fox*, 137 Mich. 519.

The decree is affirmed, with costs to appellees.

MCDONALD, C. J., and CLARK, BIRD, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.