*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARC GOODSON,

        Plaintiff-Appellant,

v

HUGH CAIRNS, JANICE VICKS, ERICKA
BRYANT, and HERITAGE POINTE
ASSOCIATION,

        Defendants-Appellees,

and

R. JOHN UMLAUF, JR., Receiver, and
WILLIAM B. MCINTYRE,

        Other Parties.

UNPUBLISHED
June 4, 2020

No. 346809
Macomb Circuit Court
LC No. 2015-004161-CZ

Before: LETICA, P.J., and STEPHENS and O'BRIEN, JJ.

PER CURIAM.

Plaintiff Marc Goodson appeals as of right, challenging the following trial court orders: (1) an August 14, 2017 order that dismissed a derivative proceeding that purported to assert plaintiff's claims on behalf of one defendant, Heritage Pointe Association (HPA), and denied plaintiff's motion to disqualify defendants' attorneys, the Makower law firm; (2) a January 26, 2017 order that approved the payment of attorney fees to the Makower law firm and the appointment of a special panel; (3) two orders entered on September 1, 2016, namely, (a) a restated order appointing a receiver, and (b) a settlement conference order; and (4) a December 10, 2018 final order, which discharged the receiver and his attorney and closed the case. We affirm. This appeal has been decided without oral argument pursuant to MCR 7.214(E).

## I. BACKGROUND

This appeal concerns a lengthy dispute among co-owners and directors of defendant HPA, a nonprofit corporation designed to administer the affairs of the Heritage Pointe Condominiums in Warren. The dispute concerned the assessment power of the board of directors and control over the HPA's finances. Plaintiff and the individual defendants—Hugh Cairns, Janice Vicks, and Ericka Bryant—each owned a residential unit within the 137-unit project and were referred to as "co-owners." When Goodson filed the original complaint on November 19, 2015, he was a member of HPA's board of directors. Cairns, Vicks, and Bryant were also members of the HPA board and had been elected officers.

## A. PRIOR LITIGATION

In a prior case before the lower court, the individual defendants in the instant case and fellow co-owners Yokeitha Ramey and Kimberly Haggins (the prior plaintiffs) filed a complaint against HPA on March 25, 2014, alleging that HPA "failed to elect a Board of Directors, hold annual meetings, establish and deliver an annual budget, maintain the common elements or the signage of the project, maintain an insurance policy on the common elements, and maintain architectural standards in violation of the Association's bylaws."[1] The prior plaintiffs asked the court to either appoint a receiver to manage HPA or otherwise direct that an election of directors and officers be held, that the noted deficiencies be rectified, and that they be awarded attorney fees and costs. The prior plaintiffs' complaint was served on HPA by certified mail to the Michigan Bureau of Commercial Services Corporation Division, the registered address of HPA, and on Goodson, the plaintiff in the present case, who was the last known officer and former president of HPA. Goodson filed an answer, stating that HPA had not collected fees since 2008 and its last operating year was 2009. The trial court struck Goodson's answer because it was filed by a non-attorney representing another entity. The prior plaintiffs moved for the court to enter a default against HPA, conduct an election, and/or appoint a receiver.

The trial court granted the prior plaintiffs' request for a default for HPA's failure to plead or otherwise defend and ordered that notice of the default be sent to HPA by ordinary first-class mail to the registered address of HPA and to Goodson's last known address. The court denied the prior plaintiffs' request for the appointment of a receiver, finding that "less intrusive means are available to effectuate the relief requested." Under MCL 450.2402, the trial court ordered the attorney for the prior plaintiffs to: (1) create a list of eligible voters reflecting the current ownership in the condominium community; (2) send notice of an election on a specified date and call for candidates for the board of directors to all current owners; (3) prepare and mail ballots to each record owner; (4) arrange for the ballots to be sent to a specific address to be provided by the prior plaintiffs' attorney and provide return envelopes for the voters to send their ballots; (5) certify the security of the election in writing; (6) notify all record owners of the election results and of a date and place for the first meeting of the board of directors; and (7) provide the newly elected board

---

[1] Attorney William B. McIntyre, who was a defendant in the present litigation and is listed as an "other party" in this appeal, represented the prior plaintiffs in the prior litigation.

of directors with a copy of the summons and complaint filed by the prior plaintiffs and a bill for services rendered.

An election was held on October 24, 2014, pursuant to the court's order. Cairns, Vicks, Bryant, Goodson, and Nina Gordon were elected to the board of directors. The board held its first meeting on October 29, 2014, at which it elected Vicks as president, Bryant as vice president, Gordon as secretary, and Cairns as treasurer. The prior plaintiffs moved on November 5, 2014, to confirm the election results, allow costs and fees associated with the election, and allow fees and costs to the prior plaintiffs. Subsequently, Goodson moved on November 24, 2014, to intervene in the prior litigation, invalidate the election, dismiss the case, and hold the prior plaintiffs solely responsible for the election costs and their legal fees. The trial court entered an order on December 8, 2014, denying Goodson's motion to intervene and confirming the election of the directors.

Goodson filed another motion to intervene, dismiss the case, and hold the prior plaintiffs responsible for their legal fees and election costs on April 27, 2015. On May 4, 2015, Goodson filed an amended motion and the prior plaintiffs filed motions for entry of a default judgment, allowance of costs ordered by the trial court, and miscellaneous matters. The trial court denied Goodson's motions, noting that his proposed intervention was defective in that it sought termination of the HPA without the proper procedure and failed to recognize that the court had already ordered an election, which had been held pursuant to MCL 450.2402, and not the HPA's bylaws or the Condominium Act. With regard to the prior plaintiffs' motions, the court noted that it had already entered a default against HPA for failure to respond to the prior plaintiffs' complaint. Following the court-ordered election of a board of directors, HPA had elected officers, conducted a membership meeting, presented a budget to the members, voted an assessment in accord with the budget, hired a management company, and obtained insurance coverage for the common elements as required by the bylaws.

On August 27, 2015, the trial court entered a final order, which noted that a provision in HPA's bylaws provided:

> [F]ailure to comply with any of the terms or provisions of the Condominium Documents shall be grounds for relief which may include, without intending to limit the same, an action to recover sums due for damages, injunctive relief, foreclosure of lien (if default in payment of assessment) or any combination thereof, and such relief may be sought by the Association or, if appropriate, by an aggrieved Co-owner or Co-owners. It shall be a precondition to the maintenance of any such action by a Co-owner that he has first complained of the violation in writing to the board of directors in [sic] that suitable relief has not been obtained.
>
> . . . . In any proceeding arising because of an alleged default by any Co-owner, the Association, or the Co-owner if successful, shall be entitled to recover the costs of the proceeding and such reasonable attorneys' fees (not limited to statutory fees) as may be determined by the court.

The court noted that HPA did not have a duly elected board of directors in place when the prior plaintiffs brought their complaint, but was notified of the complaint by the prior plaintiffs. The court found that the billing for legal services and costs to the prior plaintiffs of $10,971.77 and that

billing for costs for the court-ordered election of $6,057.64 were both reasonable and proper, and was necessarily part of the legal action for HPA's failure to comply with its bylaws' terms and conditions. The court found that the prior plaintiffs were the prevailing party and as a result of their action, HPA was a functioning condominium association.

## B. CURRENT LITIGATION

Goodson, plaintiff in the instant case (hereafter plaintiff), filed his original complaint on November 19, 2015, and filed an amended complaint on December 22, 2015. The complaints were brought as individual claims on his own behalf and as a derivative action as a representative of HPA. He alleged that the election ordered in the prior litigation was conducted entirely by a mailed ballot procedure, in which less than 20% of the co-owners and members of the HPA participated. At the first board meeting, Vicks, Bryant, and Cairns, defendants in the instant case, were elected president, vice president, and treasurer, respectively. They met as directors of HPA and assessed the co-owners $800 per unit. Plaintiff further alleged that, on March 3, 2015, he mailed petitions, signed by 33% of the co-owners to invalidate the election and amend the condominium documents, to the HPA secretary, Nina Gordon, and requested a special meeting. On or about August 11, 2015, plaintiff e-mailed petitions signed by 33% of the co-owners to the new HPA secretary, Tarita Coley, with copies to HPA president Vicks and attorney McIntyre, requesting a special meeting to remove the board of directors and elect a new board. More than 90 days had passed since plaintiff's August 11, 2015 request for a special meeting. However, despite a legal duty under the bylaws to call the special meeting, no meeting had been called.

Plaintiff further alleged that defendants Cairns, Bryant, and Vicks had repeatedly failed to provide him as a director with proper notice of the board meetings, had held meetings without him being present, had failed to respond to requests for inspection of HPA books and financials, and had excluded him from deliberations related to HPA business, breaching their implied duty of good faith and other affirmative duties imposed under the HPA bylaws, the Nonprofit Corporation Act, MCL 450.2101 *et seq.*, the Condominium Act, MCL 559.101 *et seq.*, and Michigan common law. He alleged that he had requested access to the financial books and records as a co-owner, but defendants failed to make the documents available for inspection in violation of MCL 559.157. He argued that MCL 559.207 provided that a co-owner may maintain an action against the association of co-owners and its officers and directors to compel enforcements of the terms and provision of the condominium documents, and allowed him to recover the costs of the proceeding and reasonable attorney fees if successful. The HPA bylaws also provided for attorney fees and costs against the individual defendants as co-owners in breach of the condominium documents if a co-owner sues derivatively to enforce the bylaws and is successful. In addition, the Nonprofit Corporation Act also provided a statutory basis for attorney fees and costs if an action was beneficial to the nonprofit corporation.

Plaintiff raised the following claims in his amended complaint:

Count I: a claim for breach of contract under the bylaws;

Count II: a request for a declaratory judgment and order enjoining defendants to notice and hold a special meeting for the removal of the HPA board of directors;

Count III: a request for an order enjoining defendants to properly notice the HPA board meetings to director Goodson;

Count IV: a request for a declaratory judgment that any actions taken by defendants at a board meeting for which Goodson did not receive proper notice under the bylaws were unlawful, illegal, and ultra vires;

Count V: a request for an immediate production of books, records, and contracts of the HPA pursuant to MCL 559.157;

Count VI: a claim for breach of fiduciary duties and request for injunctive relief on the ground that the $800 assessment per co-owner overstated the necessary maintenance charges and was a pretext to precipitate defaults among co-owners;

Count VII: a request for appointment of an interim receiver to control all HPA business during the pendency of the action;

Count VIII: a request for an accounting of all revenues and expenditures;

Count IX: a request for a declaratory judgment regarding the validity of the special meeting petitions, whether activities of the defendants as directors after the petitions were a material breach of the bylaws, whether Goodson is not liable for any assessment made after the breach, whether Vicks filed false reports with the state as president of HPA, and whether all actions taken by the board of directors after November 14, 2014 are rendered null and void;

Count X: a claim for common-law conversion;

Count XI: a claim for statutory conversion;

Count XII: a request that notice be given of the present derivative action to all co-owner members of the HPA;

Count XIII: a request for removal of Cairns, Vicks, and Bryant as directors of HPA.

In response, defendants noted that, in addition to HPA's master deed, bylaws, and the applicable statutes, the respective rights, duties, and obligations of the parties were further controlled by the orders entered in the prior litigation. Defendants relied on documents from the prior litigation. Defendants also alleged that, pursuant to MCL 450.2553(2), plaintiff, as a director of HPA, concurred in the actions taken by the board with regard to assessments because he failed to attend the meetings at which such actions were taken and did not file a written dissent with the HPA secretary within a reasonable time. Defendants denied that plaintiff followed the requisite procedure or submitted a valid petition that would compel the HPA to convene a special membership meeting. Moreover, the HPA convened such a meeting on two occasions after plaintiff's alleged demand on August 11, 2015. Defendants maintained that the only meetings they had conducted without notice to plaintiff were for the purposes of defending the prior litigation. Defendants alleged that plaintiff was issued proper notices for all other meetings,

including both the HPA membership meetings and meetings of the board of directors. Defendants requested that the court enter a judgment of no cause of action in their favor and against plaintiff, both individually and as a representative of HPA.

Plaintiff moved for partial summary disposition with regard to his requests for injunctive relief in Counts IV and VI. As to Count IV, plaintiff argued that summary disposition was appropriate under MCR 2.116(C)(10) because there was no genuine issue of material fact that a permanent injunction should be issued with regard to notice for the board of directors' meetings. He contended that the HPA bylaws plainly require 10 days' notice of board meetings and that a breach of the notice provision renders all actions taken at improperly noticed meetings null and void, including the assessments levied against the co-owners. Plaintiff asserted that he did not receive the required 10 days' notice for the October 29, 2014 board meeting and did not receive any notice for the December 7, 2014, and December 22, 2014 meetings. Plaintiff contended that at the December 7, 2014 meeting, defendants assessed $816.54 against all 137 homes in HPA, a total of $111,866, to pay among other things their attorney fees to attorney William McIntyre, which were incurred in the prior litigation. At the December 22, 2014 meeting, defendants hired McIntyre, who was at the time their personal attorney, to work as HPA's general counsel while he was pursuing claims against HPA on behalf of the prior plaintiffs for his attorney's fees. Plaintiff argued that "a declaratory judgment, preliminary injunction and/or permanent injunction requested in Count VI should issue enjoining all collection activities at law or in equity arising from actions taken" at the three meetings. Plaintiff also maintained that the bylaws provide that the HPA could not levy assessments for any litigation except to enforce the bylaws or collect lawfully levied assessments. He asserted that summary disposition against HPA was appropriate under MCR 2.116(C)(5) and (8) because HPA lacked the capacity to sue or defend. He also maintained that HPA must be defaulted because its answers to the amended complaint were financed by an assessment, contrary to the HPA bylaws.

Defendants responded. As background, defendants noted that the Heritage Pointe Condominium was established in 2001 by the recording of its master deed, and the HPA was established to administer the entity's affairs. According to records on file with the state, plaintiff Goodson became treasurer and director of the HPA in 2004 and its president in 2006. The HPA stopped filing annual corporate reports in 2008 and the state "automatically dissolved" the corporation after it had failed to file annual reports for three consecutive years. Around 2009, the HPA stopped holding annual meetings and conducting elections. Eventually all of the directors except plaintiff resigned or stopped doing their job and plaintiff ran the corporation. He filed annual reports for the corporation for the years 2008 through 2011 in 2012, but filed no further reports. It was against this backdrop that the complaint in the prior litigation was filed. During plaintiff's attempt to defend against the prior litigation, he allegedly acknowledged that the HPA stopped collecting assessments in 2008 and stopped operating in 2009. Defendants maintained that plaintiff filed the instant action to challenge the propriety of the court's prior decisions with regard to the election and reimbursement of fees.

Defendants further noted plaintiff's claim that HPA is prevented from incurring legal fees for asserting or defending any litigation except by following the procedures set forth in Article XXIII and Article II, § 2(d), of the bylaws, which require the approval of a majority of the members, both by numbers and value of their property, before HPA can commence any legal action aside from an action to enforce the bylaws or collect delinquent assessments. These sections

require that the board take certain actions before engaging an attorney to file a civil action on behalf of HPA. Defendants maintained that these sections did not prevent HPA from incurring legal fees and expenses to defend itself against plaintiff's lawsuit.

As to the notice issue, defendants asserted that the court in the prior litigation did not certify the election results until its order of December 8, 2014, and therefore the meetings on October 29 and December 7, 2014, could not have been official board meetings. The third meeting, held on December 22, 2014, was the first meeting of the newly elected board. Article XI, § 8, of the bylaws, entitled "First Meeting," requires that the first meeting of a newly elected board be held within 10 days of an election at such place as fixed by the directors at the meeting at which the directors were elected and provides that no notice to the newly elected directors is required, provided that a majority of the board is present. Therefore, the December 22, 2014 meeting was not subject to the normal notice requirements of the bylaws. Defendants requested that plaintiff's motion for summary disposition be denied and they be granted summary disposition on these issues under MCR 2.116(I)(2).

Plaintiff replied to defendants' response to his motion for summary disposition. He argued that Article II, § 2(d), of the bylaws was clear and unambiguous and provided that, "[a]bsent co-owner approval to commence litigation for some other purpose, defendants can only spend Association money on litigation to enforce the bylaws and to collect delinquent assessments." He also argued that Article II, § 2(d), contains a "broad and sweeping prohibition" against actions by the board of directors related to any litigation and that the defense of the current lawsuit was included in this prohibition. Plaintiff further argued that defense of the instant lawsuit through the association's funds was beyond its authority. Plaintiff maintained that the corporate defendant HPA lacked standing and its answer should be stricken. Further, plaintiff challenged the notion that two of the three meetings for which he challenged the propriety of notice occurred before the election had been confirmed, and therefore, were not official board meetings. The election was held on October 24, 2014. Defendants' attorney wrote to plaintiff to tell him that the board would meet on October 29, 2014. The HPA minutes from the October 29, 2014 meeting confirm that the board met and elected officers. The minutes from the December 7, 2014 meeting confirm that the board met and voted on the 2015 budget. The December 22, 2014 meeting could not have been the board's first meeting as argued by defendants because the bylaws state that the first meeting of the newly elected board must be held within 10 days of the election.

On May 5, 2016, the trial court entered an opinion and order granting in part plaintiff's motion for summary disposition with regard to the injunctive relief sought in Counts IV and VI of his complaint. The court found that there was no genuine issue of material fact that defendants breached the director meeting notice provisions contained in the bylaws. Article XI, § 9, of the bylaws provides that "[n]otice of regular meetings of the board of directors shall be given to each director personally, by mail, telephone or telegraph, at least ten days prior to the date named for such meeting." The notice provided to plaintiff for the October 29, 2014 meeting was dated and postmarked October 24, 2014. Plaintiff had provided an unrebutted affidavit that he received no notice of the December 7, 2014 and December 22, 2014 meetings. Therefore, plaintiff received shortened notice of the October 29, 2014 meeting, and no notice of the December 7, 2014 and December 22, 2014 meetings. Further, the court found that defendants' contention that notice was not required because the election was not certified until December 8, 2014, had no merit. It was clear from the transcript of the December 8, 2014 hearing that the judge relied on defense counsel's

representations that the directors had already assumed operation of HPA to enter the order confirming the election. Therefore, defendants were judicially estopped from asserting that the first director meeting was held on December 22, 2014. Thus, the court ruled that the actions taken at the latter two meetings were rendered null and void because of the failure to provide notice to plaintiff, and plaintiff was entitled to the requested declaratory judgment and permanent injunction with regard to those two meetings. However, the court determined that plaintiff was not entitled to the requested declaratory judgment and permanent injunction with regard to actions taken at the October 29, 2014 meeting because he did receive notice, albeit shortened notice, of that meeting and plaintiff had not established that he was harmed by the shortened notice or that it had rendered him unable to attend the meeting.

The court also found that plaintiff was entitled to summary disposition of his claims against HPA. It reasoned that Article II, § 2(d) unambiguously stated that the directors cannot "levy any assessment, or . . . incur any expense or legal fees, with respect to any litigation, other than an action to enforce these [b]ylaws or to collect delinquent assessments" without co-owner approval to commence litigation for some other purpose. The court noted that defendants were not trying to enforce the bylaws in the present litigation, but were defending against plaintiff's claim that they had violated the bylaws.

Defendants moved for reconsideration and clarification of the court's order. Defendants argued that the litigation restrictions in cases cited by the court were not included in the condominium association's articles of incorporation, that the Nonprofit Corporation Act, MCL 450.2101 *et seq.*, had been amended after those cases with respect to these issues, and bylaws may not contain provisions that are in conflict with the articles of incorporation. Defendants also argued that, on May 12, 2016, the board had served notice of a special meeting to be held on May 24, 2016. Notice was sent to plaintiff on May 12, but he did not appear at the May 24 meeting. The other four directors did attend and made efforts to correct alleged deficiencies of past meetings. They passed a resolution affirming all past acts that had been previously approved, or would have been approved except for alleged notice defects. The board also agreed to call a special meeting of co-owners to vote on whether to recall the directors and, if that vote passed, to hold an immediate election of their replacements. This was in response to plaintiff's claims that such a meeting should have been held in August 2015 in response to his presentation of petitions. Defendants asked the court to reverse its prior grant of summary disposition or to clarify its prior opinion. They moved for summary disposition in their favor on these issues.

Plaintiff moved for an order enjoining HPA from holding a special meeting to remove the board of directions, holding a new election for directors, and establishing voting privileges of the co-owners. Plaintiff argued that he was entitled to an order mandating the special meeting and establishing that all HPA members who were present or presented proxies be allowed to vote. Plaintiff argued that defendants' ex post facto attempt to ratify the previous board decisions was in violation of the court's opinion and order should be rejected. Plaintiff maintained that defendants had stated their intention to rely on the default status of co-owners resulting from the 2015 assessments to not allow those co-owners to vote at any special meeting to remove them as directors. Plaintiff argued that because the assessment had been approved at the December 7, 2014 board meeting and had been declared a nullity in the trial court's May 5, 2016 opinion and order, the assessment could not be used to default co-owners and deny their voting privileges.

Defendants responded that the assessments the board levied in December 2014 were to reimburse court-ordered expenses and not to support the current litigation, which was not commenced until November 2015. Moreover, if a special meeting had been convened in August 2015 when plaintiff first requested it, only 58 of the 137 co-owners would have been eligible to vote because the remainder were delinquent in paying their assessments. There were not enough qualified voters at that time to remove any of the directors. Moreover, the actions taken at the December 2014 meetings had been ratified on May 24, 2016, at a meeting for which plaintiff received proper notice but failed to appear.

At a June 2016 hearing, the court asked plaintiff to testify about why he did not attend that meeting. Plaintiff testified that the notice came from defendants' attorney, Ed Lee. Plaintiff said, "I personally believe that because Ed Lee was hired by the Association at a meeting to which I had no—or to which I wasn't granted proper notice, Ed Lee cannot represent the Association in this case; and, therefore, his notice had no valid validity in this case." Plaintiff's attorney interjected that the notice of the meeting should have been sent to his office rather than directly to plaintiff. The court indicated that plaintiff failed to attend the meeting, despite being able to do so.

Plaintiff's attorney indicated that the purpose of the June 2016 hearing was to discuss a special meeting to be held regarding the removal of directors and whether co-owners who had not paid the assessment could vote. The court stated that every co-owner who showed up to the meeting could vote, but there would be no proxy voting. The court ordered defendant HPA to convene the special meeting of co-owners on July 17, 2016, for the purpose of voting on the removal of the board of directors and, if the removal was approved, for election of their replacements. The court ordered that all co-owners who appeared would be entitled to vote and only those who appeared were entitled to vote. No co-owners would be disqualified from voting because of any alleged delinquency owed to HPA.

Plaintiff moved for reconsideration of the June 2016 order, arguing that the court should allow proxy voting at the July 17, 2016 special meeting as required by Article VIII, § 5, of the bylaws. The trial court issued an order agreeing.

Plaintiff moved for appointment of an interim receiver in July 2016. Plaintiff requested that an interim receiver be appointed immediately and all control of HPA business be transferred to the receiver for the pendency of the case. Plaintiff also requested that all costs associated with the receiver be chargeable against the individual defendants. Plaintiff also moved to discharge all assessment liens arising from the 2015 assessments.

Plaintiff's motions were considered at a hearing in August 2016. Plaintiff's attorney alleged that defendants continued to collect the assessment liens, even after the May 2016 order. He also clarified that discharge of the liens was sought derivatively on behalf of HPA members. Plaintiff's attorney indicated that the board had not been removed at the special meeting on July 17, 2016, because a majority of the co-owners had not been present, although those that attended voted 58 to 17 to remove the board. Defendants' attorney argued that the individual defendants were indemnified under the condominium documents and the Condominium Act. Defendants were not court ordered to stop collecting assessments. They voluntarily put a hold on pursuing legal action against co-owners, but if a co-owner approached HPA trying to clear a lien because they wanted to sell or refinance, defendants would process the request. The court indicated that it

was appointing R. John Umlauf, Jr. as receiver. The receiver's fees would be borne by HPA. The court stated that the "individual defendants were acting within their respective duties and they're not going to be held responsible for this. I didn't see any ultra vires acts. They acted under the guise of their attorneys and their management team. So they were well within their responsibilities under the Act." The court further indicated that plaintiff had no authority to address the liens on behalf of individual co-owners.

The court entered an order appointing Umlauf as receiver and designating his fees as an administrative expense of HPA, to be apportioned among and paid by the co-owners in accordance with their respective percentages of value. The court also entered an order denying plaintiff's motion regarding discharge of the liens.

On August 8, 2016, the trial court entered an opinion and order regarding defendants' motion for reconsideration and/or clarification of the court's May 5, 2016 opinion and order. The court held that, contrary to defendants' argument, they were not attempting to enforce the bylaws but were defending against plaintiff's claim that they had violated the bylaws. Therefore, the directors did not have authority to levy any assessments or incur any expenses to defend HPA in this litigation. The court found that HPA lacked authority to defend against plaintiff's claims, and plaintiff was entitled to summary disposition with regard to his claims against HPA. The court found that MCL 559.153 of the Condominium Act provides that the "administration of a condominium project shall be governed by bylaws recorded as part of the master deed, or as provided in the master deed." Therefore, the Condominium Act authorized the bylaws to restrict the administration of the condominium, including any limitation on assessments for litigation. The court also determined that the limitation on assessments in the bylaws was not inconsistent with the articles of incorporation, which only imposed a restriction on the HPA's commencement of a lawsuit that was not an action to enforce the bylaws or collect assessments. Article II, § 2(d), of the bylaws restricted the board's authority to levy assessments or incur any expense or legal fees with regard to any litigation other than to enforce the bylaws or collect assessments. Thus, the bylaws were not inconsistent with the articles of incorporation, but expanded the restrictions found there. The court concluded it would not reconsider its ruling regarding HPA's authority to defend the lawsuit.

However, the court determined that defendants did establish grounds for reconsideration of the court's ruling regarding actions taken at the improperly noticed meetings held on December 7, 2014, and December 22, 2014. Those actions had been ratified by the resolution adopted at the special board meeting on May 24, 2016. Notice for this special meeting was properly provided to all directors as required by the bylaws. Therefore, the court denied defendants' motion for reconsideration regarding plaintiff's claims against HPA, but granted reconsideration regarding the actions taken at the December 7, 2014 and December 22, 2014 board meetings. The actions taken at those meetings were no longer considered null and void because the board ratified them.

Plaintiff moved for reconsideration of the court's August 8, 2016 opinion and order. Plaintiff argued that actions taken by the board in violation of the bylaw notice provisions were invalid. The May 2016 opinion and order had rendered them void. There was no authority under the HPA bylaws or the Nonprofit Corporation Act to support ratification of a void corporate action. To assess the property owners, the board would have to pass a prospective assessment at a properly noticed and scheduled board meeting. The resolution passed at the May 24, 2016 meeting also

ratified retention of the Makower law firm, which violated the court's May 5, 2016 opinion and order and Article II, § 2(d), of the bylaws. Plaintiff requested that the court grant reconsideration and reinstate the May 5, 2016 opinion and order as it related to the actions taken by the board at the December 7, 2014 and December 22, 2014 board meetings.

On August 29, 2016, the HPA receiver filed an emergency motion for entry of a restated order appointing the receiver. The receiver indicated that the previous order appointing him was ineffective because it did not define the duties and responsibilities of the receiver and his attempts to have the parties agree upon a restated order were unsuccessful.

On September 1, 2016, the trial court entered two orders. The first restated the order appointing R. John Umlauf, Jr., as receiver for HPA until further order of the court. The Restated Order Appointing Receiver ("ROAR") indicated that the receiver was

> authorized to take immediate possession of the Company and to exercise full control of the Company, including the assessments, rents, issues, profits, revenue, and all personal property of the Company, and i[n] so doing the Receiver shall have all powers generally available to receivers under the laws of the State of Michigan and shall have, among others the following specific powers:
>
> C. To collect the levy and collect (if appropriate) assets of the Company, including assessments, rents, issues, profits, revenues;
>
> (a) to enforce its bylaws[;]
>
> (b) to enforce the valid terms and conditions of any agreements of the Company and to execute, cancel, or modify such agreements as may from time to time be appropriate;
>
> (c) to enforce, execute or terminate contracts providing for the management, operation, maintenance, security and the provision of the goods and services to the Company;
>
> (d) to retain counsel, and if necessary, to institute and prosecute suits on behalf of the Company, including suits for the collection of assessments, rents, issues, profits, revenues and proceeds of the Company;
>
> (e) to operate the Company business, either directly or through such managers, operators, agents or other persons or entities as the receiver may from time to time deem appropriate;
>
> (f) to pay from Company assets all expenses and costs incurred by the receiver in such operations;
>
> (g) to borrow such funds as may be required to pay the costs and expenses of the administration of the Receivership, including but not limited to:

a. the operating, maintenance, preservation and protection of the Company and related personal property;

b. city, county, state and federal taxes and assessments on both the real and personal property of the Company, on a current basis, and

c. the fees of the receiver

and to issue receiver's certificates as evidence thereof, which certificates shall constitute a lien upon the Company and related real and personal property, which lien shall be prior to all other liens, titles or claims with respect to the Company except such as shall be perfected on or prior to the date thereof;

(h) to maintain a separate bank account in his own name as receiver, from which he shall disburse all authorized payments as provided in this Order;

(i) to employ such help as may, in the opinion of the Receiver, be necessary and beneficial for the preservation of the Company and the operation of the Company business and to purchase, contract and pay for such materials, supplies, utilities, services, taxes, benefits, insurance and other goods, services, and intangibles as may be necessary for the aforesaid purposes.

\* \* \*

6. The Receiver shall have such additional powers as are provided by law and as this Court may from time to time direct.

\* \* \*

E. The Receiver shall be compensated at the rate of $300.00 per hour plus out of pocket expenses. Billing will be prepared monthly. The Court will review and approve the appropriateness of the fees and expenses.

1. The court will determine if the approved receiver fees and expenses shall be paid by a special and/or additional assessment equally amo[ng] the 137 Co-owners or

2. An assessment against certain individuals, acting as Board Members[.]

F. The Court will determine the validity and costs of the various legal fees associated with this litigation. If legal fees are approved, the Court will determine

1. If the fees should be paid through a special and/or additional assessment equally among the 137 Co-owners

2. or an assessment against certain individuals, acting as Board Members[.]

G. No person or entity shall file suit[] against the Receiver with[]out the express prior authority of this Court.

The court also entered an order on September 1, 2016, entitled "Settlement Conference Order" (SCO), in which the court ordered plaintiff to deliver to the receiver by September 8, 2016, "any Quick Books software program and all related data in his possession or control regarding the" HPA. If plaintiff did not have either of these items, he was ordered to so advise the receiver by September 8, 2016. The court further ordered the receiver to convene HPA's 2016 annual meeting within 90 days of September 20, 2016, timely notify all co-owners of the meeting, and prepare any absentee ballots and proxies to be used for the meeting. It also ruled that, absent a stipulation, the court must approve the annual meeting package before it was sent to the co-owners. And the court ordered the receiver to "enter into a new, separate retainer for current legal counsel, Makower Abbate Guerra Wegner Vollmer PLLC, to continue to represent the [HPA] in this matter, effective as of the entry of this order." Legal counsel was required to submit its billings to the "receiver with the understanding that no . . . bills . . .be paid by [the] receiver unless and until approved by the court."

On September 2, 2016, the trial court issued an order granting plaintiff's motion for reconsideration regarding the court's holding in the August 8, 2016 opinion and order that the actions taken at the meetings on December 7, 2014, and December 22, 2014, had been ratified. The trial court ruled that the December 2014 board meetings were illegal and the actions taken by the board were void for lack of notice to plaintiff. A void action is incapable of being ratified. Therefore, the court reversed its holding in the August 8, 2016 opinion and order regarding the actions taken at the December 2014 board meetings.

In September 2016, plaintiff moved for summary disposition regarding actions taken by the HPA board at the August 17, 2015 board meeting. He sought an order of declaratory judgment that actions taken were null and void and unenforceable for lack of proper notice to plaintiff. He claimed that he received only seven days' notice of the meeting, by e-mail, rather than the 10-day notice by mail, personal service, telephone, or telegraph required by Article XI, § 9, of the bylaws. He argued that lack of notice or improper notice rendered actions taken at the meeting a nullity. Plaintiff also sought an order of permanent injunction against any collection activities arising from the assessments passed at that meeting, or other prior or subsequent board meetings for which he had not been provided with proper notice. He stated that the actions that occurred at the meeting included the retention of the Makower law firm, approval of the 2016 budget, and the 2016 HPA assessments. Plaintiff indicated that this motion related to Count IV of his amended complaint.

Thereafter, plaintiff moved to terminate the receivership. He argued that the court's orders entered on September 1, 2016—SCO and ROAR—were flawed. According to plaintiff, the ROAR gave the receiver powers outside the HPA bylaws, particularly regarding the issue of incurring debt and litigation expenses without a vote by the HPA co-owners. Plaintiff contended that the court was substituting its judgment for the agreement of the co-owners, particularly in the sensitive areas of incurring attorney fees and litigation expenses. Plaintiff had requested a receiver for limited purposes—to collect assets and guard them from depletion, fairly and honestly administer HPA, obey and follow court orders, and render an accounting. The receiver had ignored the fact that the 2015 assessment had been rendered a nullity. The 2015 assessments had been booked, according to the receiver's reports, as revenue and receivables of the HPA. This violated the

-13-

court's May 5, 2016 opinion and order because these monies stemmed from the 2015 assessments. Plaintiff noted that he was not seeking reimbursement from HPA members for his attorney fees and costs in the litigation and maintained that these were elements of damages to be borne by the individual defendants. He had demanded a jury trial on the triable issues, such as whether the individual defendants' actions were grossly negligent. With regard to the SCO, plaintiff maintained that the order violated the HPA bylaws by adjourning the annual meeting for up to 90 days. The bylaws called for an annual meeting on the third Tuesday of September each year after the first annual meeting was held. The SCO called for the receiver to prepare proxies and absentee ballots and orders that no others may be used, which negated the proxies that plaintiff had already collected. The SCO also ordered the receiver to enter into a new separate retainer agreement for the Makower firm to continue to represent HPA in this matter, although the Makower firm represented the individual defendants. Plaintiff requested that the court terminate the receivership and order the election of a new board.

Defendants responded that equity and due process required that the actions taken by the board be upheld. Defendants also opposed plaintiff's motion to terminate the receivership, noting that plaintiff had requested that the court immediately appoint a receiver. Defendants argued that the court had the power to alter the terms of the bylaws and the power to grant the receiver broad control over the association.

The circuit court considered plaintiff's motions in October 2016. The receiver had filed his first report and asked for further instructions. The receiver's attorney noted that the court had ordered the receiver to retain the Makower firm to defend HPA, and the receiver had received an attorney fee request from Makower and was seeking court approval. Plaintiff objected to the payment as violative of Article II, § 2(d) of the bylaws. Plaintiff contended that the issue had come to be whether the receiver was imbued with powers to act outside the bylaws, which should be enforced as written. Plaintiff's attorney argued that a "core issue" was that the bylaws barred the receiver from incurring attorney fees by hiring lawyers to defend against plaintiff's lawsuit. The receiver's attorney stated that the receiver's job was simply to gather the assets of the company and that the court's appointment of a receiver did trump HPA's bylaws. Gathering HPA's assets necessarily included assessing its debts and liabilities, which included claims for attorney fees. The receiver had so far simply noted the potential liability for paying legal fees on the books and would not pay the fees unless approved by the court. Defendants' counsel argued that plaintiff had sought the appointment of a receiver as partial relief in a derivative action, pursuant to MCL 450.2489. That statute authorized the trial court to cancel or alter the bylaws as necessary. Defendants' counsel maintained that because the matter was a derivative action, neither the court nor the court-appointed receiver were bound by the bylaws. Defendants' counsel also noted that plaintiff had received actual notice of the board meeting appointing the Makower firm. Following the hearing, the court entered an order denying plaintiff's motions for summary disposition regarding actions taken at the August 17, 2015 board meeting and plaintiff's motion to terminate the receivership.[2]

_____

[2] On September 27, 2016, the receiver had also filed a motion to adopt his initial report and to request additional directions. His motion was also discussed at the October 2016 hearing, and the

-14-

Defendant HPA moved under MCL 450.2495(2)(c) and MCL 450.2494 for appointment of a panel of one or more disinterested individuals to investigate and make a good-faith determination whether maintenance of plaintiff's derivative suit was in the best interests of HPA and its members, as required under MCL 450.2492a. In his amended complaint, plaintiff alleged actions of defendants that had interfered with his individual rights, but failed to allege that actions of defendants had interfered with the rights of HPA or its members as a whole. Due to the volunteer nature of the board, HPA maintained that it was appropriate for the court to appoint a neutral panel pursuant to MCL 450.2495(2)(c).

Plaintiff opposed the motion for appointment of a panel. Noting that a new board of directors had been elected at the November 22, 2016 meeting, and that he was on the new board, plaintiff alleged that the receiver advocated for defendants at the meeting and stated that plaintiff was to blame for the receivership and attorney fees. Plaintiff alleged that the receiver announced at the meeting that the court order validated the fees owed to the Makower firm and would continue to grow because of collection activities related to the 2015 assessment, although this assessment had been declared null and void. Plaintiff contended that MCL 450.2492a was not in effect when the issues in this case arose and should not apply. Under the former statute, a member had a right to mount a derivative action without statutory conditions being imposed.

The court issued an order on January 26, 2017. As a preliminary matter, the court reconsidered its prior holding set forth in its May 5, 2016 and August 8, 2016 opinions and orders that the board lacked authority under the bylaws to levy any assessment or incur any expense necessary for the HPA to defend itself in this litigation. The court noted that the two orders were not final orders and were subject to the court's revision under MCR 2.604(A). The court again considered the interplay between Article II, § 2(d), and Article XXIII of the bylaws. The court held that Article II, § 2(d), set a limitation on the board's power to make assessments for litigation, other than actions to enforce the bylaws or collect delinquent assessments, whereas Article XXIII provides that the commencement of any other civil action requires the approval of a majority of the co-owners. The court determined that the intent of Article II, § 2(d), was to enforce Article XXIII, not to prohibit HPA from incurring legal fees to defend itself in litigation such as the present case. Article XXIII only limits the commencement of litigation, not the defense of litigation. The court noted that HPA was unable to appear in any judicial proceeding without being represented by an attorney. Thus, HPA would be unable to defend itself if it were not able to levy an assessment or incur expenses to retain counsel. Therefore, the court found that accepting plaintiff's interpretation of the bylaws would prevent HPA from being able to defend itself, which would be a deprivation of due process. The court set aside the orders entered on May 5, 2016, and August 8, 2016, to the extent that they were inconsistent.

With regard to HPA's motion for appointment of a panel, the court noted that, although HPA was incorporated before the foregoing sections of the Nonprofit Corporation Act were enacted, effective January 15, 2015, MCL 450.2121 provides that a corporation "formed under or subject to a predecessor act is subject to this act except to the extent that this act conflicts with the

---

trial court issued an order granting the motion. Plaintiff moved for reconsideration of the trial court's order, which the trial court denied.

articles and bylaws of the corporation lawfully made under the predecessor act." The court determined that the derivative proceeding brought by plaintiff was subject to the provisions of the Nonprofit Corporation Act, enacted effective January 15, 2015, unless the newly enacted provisions conflicted with HPA's articles or bylaws. The court determined that the Nonprofit Corporation Act allows for a co-owner to maintain a derivative action if it is in the best interests of the corporation and the co-owner does so fairly and adequately, and, thus, there was no conflict with the HPA bylaws. The court concluded that HPA properly relied on MCL 450.2495(1) and (2) to support its request for appointment of a panel of disinterested persons to investigate whether plaintiff's derivative action was in HPA's best interests. The court ordered that the panel would consist of three disinterested individuals. HPA and plaintiff would each nominate one individual and together would agree on a third individual. If they could not agree on a third individual, the court would select an individual. The court also stayed plaintiff's derivative proceeding until the panel made its determination. The court granted the receiver's request for payment of fees and attorney's fees and Makower law firm's request for fees related to collection efforts and litigation fees.

On June 14, 2017, HPA moved to approve the panel's unanimous determination that maintenance of the derivative proceeding brought by plaintiff was not in the best interests of HPA.

On July 11, 2017, plaintiff moved to disqualify the Makower law firm from its dual representation of both HPA and the individual defendants.

The trial court entered an opinion and order regarding HPA's motion to approve the panel's determination and plaintiff's motion to disqualify the Makower law firm on August 14, 2017. With regard to the motion to confirm the panel's finding, the court found as a preliminary matter that plaintiff could not collaterally attack in the present case decisions made by the court in the prior litigation. The court also noted that it was disregarding "the parties continued histrionics and hyperbole." The court stated that the panel, formed under MCL 450.2495(2)(c), had determined that continued maintenance of the derivative proceeding was not in defendant HPA's best interests. Therefore, the court dismissed the derivative proceeding unless plaintiff established that "the panel's determination was not made in good faith or the panel conducted an unreasonable investigation." The court found that the panel "considered the extensive briefs and exhibits submitted by the parties," "held a hearing on May 3, 2017 at which time the parties were permitted to argue their respective positions," and "clearly made a reasonable effort in examining the outstanding claims before making its decision." The court further stated:

> Moreover, plaintiff acknowledges the panel weighed the costs of continuing to defend the derivative action in weighing whether continuation of the derivative action was in defendant Heritage Pointe Association's best interests. In this regard, plaintiff's complaint sought to remove the prior board, invalidate certain assessments, recover certain expenses, enforce certain Bylaws and have a receiver appointed. Given the recently held election of a new board, the prior board is no longer in office. The Bylaws require all expenses of defendant Heritage Pointe Association to be assessed against it. Art. II. To this end, the Board's invalid assessments were reassessed by the receiver. MCL 450.2489(1)(c) and (d). Prior decisions have approved part of defendants' attorney fees consistent with the right of directors and officers to be indemnified by defendant Heritage Pointe

-16-

Association. Bylaws, Art. XVII. There is no evidence the current board is violating the Bylaws. Given the resolution of virtually all of the derivative claims, the panel could determine in good faith that *continued* maintenance of the derivative action was not, in light of the ongoing costs of defending the essentially resolved derivative action, in defendant Heritage Pointe Association's best interests.

Therefore, plaintiff's derivative action must be dismissed under MCL 450.2495(1).

With regard to plaintiff's motion to disqualify the Makower firm, the trial court noted that, although the board's ability to hire Makower was contested, the receiver subsequently and independently retained Makower pursuant to the court's September 1, 2016 SCO. Therefore, Makower's fees were properly assessed against HPA. With regard to plaintiff's conflict-of-interest argument, the court noted that the individual defendants and HPA have a commonality of interest. Defendant HPA's liability was based on the individual defendants' actions when they comprised the majority of the HPA board of directors. Indeed, plaintiff's ability to recover against the individual defendants under the articles of incorporation would require HPA to concede liability to plaintiff. The court determined that plaintiff had not established that Makower's representation of HPA was directly adverse or materially limited by the firm's representation of the individual defendants and denied plaintiff's motion to disqualify the firm.

The court did not dismiss plaintiff's individual claims, but noted that, "without prejudging this matter, plaintiff's individual claims would appear to be limited to nominal damages (especially in light of his limited—1 in 137—interest in defendant [HPA])." The court did not award costs and fees under MCL 450.2497 to defendant because plaintiff had proved some of his claims underlying the derivative proceeding. The court also denied defendants' request for a security bond because plaintiff had already prevailed on some allegations. The court approved the receiver's reports from August 1, 2016 through April 30, 2017, approved payment of fees to the receiver, and payment to Makower.

Plaintiff's motion for reconsideration or clarification of the court's August 14, 2017 order was denied. The receiver also filed a motion for reconsideration or clarification, which was denied with suggestions from the court to file a motion for relief, motion for correction, or renewed motion in order to proffer new evidence. The receiver filed a renewed motion and request for payment of remaining receiver's fees through May 21, 2017, which the court granted.

The trial court entered an order setting December 13, 2017, as the date for a bench trial on the remaining issues. Plaintiff moved for reconsideration and reinstatement of his right to a jury trial related to the non-equitable causes of action. The trial court granted plaintiff's motion in part, with respect to legal claims for breach of contract and conversion, subject to plaintiff presenting an offer of proof before jury selection, and denied plaintiff's motion in all other respects.

On December 13, 2017, the date set for trial, the court heard the parties' positions on the conversion and breach-of-bylaws claims. The court dismissed the conversion claim. And, because plaintiff could not establish damages, the court dismissed the breach-of-bylaws claim. The trial court granted defendants' oral motion for summary disposition under MCR 2.116(I)(1) on plaintiff's conversion and breach-of-bylaws claims. The court also noted that the receiver agreed

-17-

to work pro bono for the next six months to wind down the receivership and return operation of HPA to a functioning board of directors by June 30, 2018. The parties agreed to appear for a review of the status of the receivership on June 1, 2018.

On November 20, 2018, the trial court entered an order stating that the receiver informed the court that an annual meeting was held in September 2018 and a new board of directors was elected. The receiver reported that the new board was actively controlling the HPA's day-to-day operations. All accounts payable would be paid by November 30, 2018, and there were sufficient funds to pay daily operating expenses. The receiver recommended termination of the receivership. The court entered a final order accepting the receiver's November 30, 2018 report, granting discharge of the receiver and his attorney, and closing the case in December 2018.

This appeal followed.

## II. LEGAL FEES

Plaintiff argues that the trial court erred when, in the January 26, 2017 opinion and order it reversed its earlier holding in its May 5, 2016 opinion and order that the board of directors was without authority to hire an attorney or incur any other expense regarding the current litigation. We disagree.

## A. STANDARD OF REVIEW

This issue involves the interpretation of condominium bylaws. In *Tuscany Grove Ass'n v Peraino*, 311 Mich App 389, 393; 875 NW2d 234 (2015), we observed:

> Pursuant to the Condominium Act, administration of a condominium project is governed by the condominium bylaws. Bylaws are attached to the master deed and, along with the other condominium documents, the bylaws dictate the rights and obligations of a co-owner in the condominium. Condominium bylaws are interpreted according to the rules governing the interpretation of a contract. Accordingly, this Court begins by examining the language of the bylaws. Words are interpreted according to their plain and ordinary meaning. Further, this Court avoids interpretations that would render any part of the document surplusage or nugatory, and instead this Court gives effect to every word, phrase, and clause. Ultimately, we enforce clear and unambiguous language as written. [Citations omitted.]

"The construction and interpretation of an unambiguous contract is a question of law that we review de novo." *Rossow v Brentwood Farms Dev, Inc*, 251 Mich App 652, 658; 651 NW2d 458 (2002).

## B. ANALYSIS

On May 5, 2016, the trial court entered an opinion and order granting in part plaintiff's motion for summary disposition with regard to the injunctive relief sought in Counts IV and VI of his complaint. The court also found that plaintiff was entitled to summary disposition of his claims against HPA. The court reasoned that Article II, § 2(d), unambiguously states that directors cannot

-18-

"levy any assessment, or . . . incur any expense or legal fees, with respect to any litigation, other than an action to enforce these [b]ylaws or to collect delinquent assessments" without co-owner approval to commence litigation for some other purpose. The court reiterated this holding in its August 8, 2016 opinion and order, holding that defendants did not have authority to levy any assessments or incur any expenses to defend HPA in this litigation. However, in its January 26, 2017 opinion and order, the court sua sponte reconsidered its prior decisions that the board lacked authority under the bylaws to levy any assessment or incur any expense necessary for the HPA to defend itself in this litigation. The court noted that HPA was unable to appear in any judicial proceeding without being represented by an attorney and would be unable to defend itself if it were not able to levy an assessment or incur expenses to retain counsel. This outcome, the court reasoned, would violate due process.

Resolution of this question requires us to review the language of the pertinent bylaws. Article II of the bylaws is titled "Assessments." It begins with a statement that "[a]ll expenses arising from the management, administration and operation of the Association in pursuance of its authorizations and responsibilities as set forth in the Condominium Documents and the [Michigan Condominium] Act shall be levied by the Association against the Homesites and the Co-owners thereof in accordance with the following provisions[.]" Section 1 of Article II concerns assessments for common elements of the condominium project and is irrelevant here. Section 2 concerns the determination of assessments. Section 2(a) provides, in pertinent part:

> The Association shall establish an annual budget in advance for each fiscal year and such budget shall project all expenses for the forthcoming year which may be required for the proper operation, management and maintenance of the Condominium Project, including a reasonable allowance for contingencies and reserves. . . . Upon adoption of an annual budget by the Association, copies of the budget shall be delivered to each Co-owner and the assessment for said year shall be established based upon said budget.

Section 2(a) of Article II further provides that if HPA decides at any time, in its sole discretion, that the assessment levied may be insufficient to pay the costs of operation and management, to provide certain replacement or new additions to the common elements of the project, HPA "shall have the authority to increase the general assessment or to levy such additional assessment or assessments as it shall deem to be necessary." Section 2(b) of Article II provides that special assessments require the prior approval of more than 60% of the co-owners. Section 2(c) concerns the apportionment of assessments.

The analysis focuses on the intersection between Article II, § 2(d), and Article XXIII of the bylaws. Section 2(d) limits the authority of the board of directors to assess the co-owners to cover the costs of litigation. It provides:

> The Board of Directors shall not have authority under this Article II, Section 2, or any other provision of these Bylaws or the Master Deed, to levy any assessment, or to incur any expense or legal fees, with respect to any litigation, other than an action to enforce these Bylaws or to collect delinquent assessments, unless expressly authorized pursuant to Article XXIII hereof.

-19-

Article XXIII of the bylaws is titled "Judicial Actions and Claims." Its introductory paragraph provides:

> Actions on behalf of and against the Co-owners shall be brought in the name of the Association. Subject to the express limitations on actions in these Bylaws and in the Association's Articles of Incorporation, the Association may assert, defend or settle claims on behalf of all Co-owners in connection with the Common Elements of the Condominium. As provided in the Articles of Incorporation of the Association, the commencement of any civil action (other than one to enforce these Bylaws or collect delinquent assessments) shall require the approval of a majority in number and in value of the Co-owners, and shall be governed by the requirements of this Article. The requirements of this Article will ensure that the Co-owners are fully informed regarding the prospects and likely costs of any civil actions actually filed by the Association. These requirements are imposed in order to reduce both the cost of litigation and the risk of improvident litigation, and in order to avoid the waste of the Association's assets in litigation where reasonable and prudent alternatives to the litigation exist. Each Co-owner shall have standing to sue to enforce the requirements of this Article. The following procedures and requirements apply to the Association's commencement of any civil action other than an action to enforce these Bylaws or to collect delinquent assessments[.]

The remainder of Article XXIII concerns procedures for the board and co-owners to follow before and during the commencement of an action by HPA. For example, before commencing an action, the board must recommend to the co-owners that an action be filed and call a special meeting of the co-owners to evaluate the merits of the proposed action. Before the litigation evaluation meeting, the board must provide information to the co-owners about the proposed litigation; the name of their proposed litigation attorney and the attorney's relevant experience; and the proposed attorney's estimates of the amount of the likely recovery, the likely cost of going to trial, and the proposed fee agreement. The board must also provide an estimate of the amount to be assessed against each unit to fund the proposed litigation. All legal fees incurred in pursuit of the litigation must be paid by special assessment of the co-owners, which has been approved by a majority of the co-owners. Article XXIII notably does not provide any requirements for raising a *defense* against an action filed *against* HPA.

As an initial matter, we note that the May 5, 2016 and August 8, 2016 orders were not final orders. As the court stated in its January 26, 2017 order, under MCR 2.604(A), "an order or other form of decision adjudicating fewer than all the claims, or the rights and liabilities of fewer than all the parties, does not terminate the action as to any of the claims or parties, and the order is subject to revision before entry of final judgment adjudicating all the claims and the rights and liabilities of all the parties." Therefore, the trial court had the authority to sua sponte reconsider its prior rulings.

The trial court correctly found in the January 26, 2017 opinion and order that "the intent of Article II, § 2(d) was to ensure compliance with Article XXIII, not to prohibit Defendant HPA from incurring legal fees to defend itself in litigation." Plaintiff's interpretation of Article II, § 2(d), if adopted, presents a due-process concern. In civil cases, due process generally requires notice of the nature of the proceedings, a meaningful time and manner to be heard, and an impartial

decision-maker. *Cummings v Wayne Co*, 210 Mich App 249, 253; 533 NW2d 13 (1995). As noted by the trial court, a corporation, unlike a person, may appear in court only through a licensed attorney. See *Fraser Trebilcock Davis & Dunlap PC v Boyce Trust 2350*, 497 Mich 265, 277; 870 NW2d 494 (2015). Because HPA cannot appear in a judicial proceeding without an attorney, it could not defend itself against any complaint filed against it, including plaintiff's, if it could not finance representation by an attorney through assessments, and would be defaulted. Lacking any opportunity to answer plaintiff's complaint, which impacted HPA's financial property, would be a denial of HPA's right to due process.

Plaintiff contends that the bylaws must be strictly construed, relying on our prior decision in *Tuscany Grove*. The plaintiff in that case was a condominium association that brought an action against one of the unit owners to enforce a fencing restriction contained in a bylaw. The trial court, however, granted the defendant's motion for summary disposition because the plaintiff had violated a bylaw by not obtaining approval of two-thirds of the owners before incurring legal expenses in the litigation. *Id.* at 391-393. The bylaw was similar to that in the present case and provided in pertinent part that the board of directors "shall not have authority under this Article II, § 2, or any other provision of these Bylaws or the Master Deed, to levy any assessment, *or to incur any expense or legal fees with respect to any litigation without the prior approval, by affirmative vote, of not less than 66-2/3% of all Co-owners in value and in number.* This section shall not apply to any litigation commenced by the Association to enforce collection of delinquent assessments[.]" *Id.* at 393-394. This Court stated that the "clear and unambiguous terms" of the bylaw made it clear that the plaintiff's board of directors did not have the authority to incur any legal fees with respect to any litigation except collection of delinquent assessments without the approval from a supermajority of the owners and found that the trial court properly granted summary disposition to the defendant. *Id.* at 394, 402. Plaintiff's reliance on this case is misplaced because in *Tuscany Grove* the litigation expense prohibition in the bylaws was used to prevent the *commencement* of the condominium association's lawsuit, not the defense of a lawsuit filed against the association as in this case. Thus, application of the bylaw in *Tuscany Grove* did not present the same due-process concern, which was paramount to the trial court's decision in this case.

Accordingly, the trial court did not err by ruling that, as a matter of due process, Article II, § 2(d), did not prevent HPA's board of directors from incurring expenses necessary for HPA to *defend* itself in the action brought by plaintiff and by paying those expenses through assessments of the co-owners.

III. NOTICE

Plaintiff requests that all actions taken at the improperly noticed board meetings that concerned the 2014 and 2015 assessments and the retention of the Makower law firm to represent HPA be declared null and void. But, even assuming that plaintiff was entitled to have the board's actions declared null and void regarding its actions, this issue is moot because those same actions were later ordered by the receiver, acting as the agent of the trial court. *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998) ("An issue is deemed moot when an event occurs that renders it impossible for a reviewing court to grant relief.").

-21-

## IV.  RECEIVER AND MCL 450.2489

Plaintiff argues that the trial court erred by granting broad powers to the receiver, including imposing assessments against the co-owners to cover HPA expenses and retaining the Makower firm to represent HPA in its assessment and collection efforts.  We disagree.

### A.  STANDARD OF REVIEW

We review equitable actions de novo.  *Mich Nat'l Bank & Trust Co v Morren*, 194 Mich App 407, 410; 487 NW2d 784 (1992).  "A court acting in equity looks at the whole situation and grants or withholds relief as good conscience dictates."  *Id.* (quotation marks omitted).  This issue also involves statutory construction, which is a question of law that we also review de novo.  *Lincoln v Gen Motors Corp*, 461 Mich 483, 489-490; 607 NW2d 73 (2000).

### B.  ANALYSIS

A circuit court has broad jurisdiction to appoint receivers in appropriate cases.  *Arbor Farms LLC v Geostar Corp*, 305 Mich App 374, 390-391; 853 NW2d 421 (2014).  A receiver is an officer of the appointing court and is "regarded as the arm of the court."  *Pontiac Trust Co v Newell*, 266 Mich 490, 495; 254 NW 178 (1934).  "A receiver is not appointed as the agent of, or for the benefit of, one party or the other; rather he or she is appointed to protect and benefit both parties equally."  *Ypsilanti Fire Marshal v Kircher (On Reconsideration)*, 273 Mich App 496, 528; 730 NW2d 481 (2007).  "The primary purpose of a receiver is to preserve property and to dispose of it under the order of the court."  *Band v Livonia Assocs*, 176 Mich App 95, 104; 439 NW2d 285 (1989).  "[T]he extent of a receiver's authority is always to be measured by the order of appointment and such subsequent directions as may from time to time be given."  *Face v Hall*, 183 Mich 22, 32; 148 NW 777 (1914).

Plaintiff moved to have a receiver appointed pursuant to MCL 600.2926, which provides:

> Circuit court judges in the exercise of their equitable powers, may appoint receivers in all cases pending where appointment is allowed by law.  This authority may be exercised in vacation, in chambers, and during sessions of the court.  In all cases in which a receiver is appointed the court shall provide for bond and shall define the receiver's power and duties where they are not otherwise spelled out by law.  Subject to limitations in the law or imposed by the court, the receiver shall be charged with all of the estate, real and personal debts of the debtor as trustee for the benefit of the debtor, creditors and others interested.

> The court may terminate any receivership and return the property held by the receiver to the debtor whenever it appears to be to the best interest of the debtor, the creditors and others interested.

The trial court appointed Umlauf as receiver and memorialized the receiver's duties in the ROAR order, entered on September 1, 2016.  The order authorized the receiver to "take immediate possession of the Company [HPA] and to exercise full control of the Company, including the assessments, rents, issues, profits, revenue, and all personal property of the Company."  The order gave the receiver "all powers generally available to receivers under the laws of the State of

Michigan," specifically the powers to levy and collect HPA assessments, rents, issues, profits, and revenues; to enforce the bylaws; to enforce the terms of any agreements and to cancel or modify such agreements; to enforce, execute or terminate HPA contracts with third-party service providers; to retain counsel and institute and prosecute lawsuits on behalf of HPA if necessary; to operate HPA business directly or through managers and agents; to pay from HPA assets all expenses and costs incurred by the receiver; and to borrow such funds as may be required to pay the costs and expenses of the receivership administration. The ROAR indicated that the court would "determine the validity and costs of the various legal fees associated with this litigation" and would determine if legal fees "should be paid through a special and/or additional assessment equally among the 137 Co-owners" or "an assessment against certain individuals, acting as Board Members."

Plaintiff conflates the power of the board of directors to act on behalf of HPA, which is restricted by the condominium bylaws and other documents, with the power of the circuit court to act in this action in which plaintiff sought equity.[3] Article XI, § 3, of the HPA bylaws explains the power and duties of the HPA board of directors, providing:

> The board of directors shall have the powers and duties necessary for the administration of the affairs of the Association and may do all acts and things as are not prohibited by the Condominium Documents or required thereby to be exercised and done by the Co-owners. Any action required by the Condominium Documents to be done by the Association shall be performed by action of the board of directors unless specifically required to be done by, or with the approval of, the Co-owners.

With regard to the court's authority to act in this derivative proceeding, MCL 450.2489 of the Nonprofit Corporation Act provides, in pertinent part:

> (1) A director of a corporation that is organized on a directorship basis, a shareholder of a corporation that is organized on a stock basis, or a member of a corporation that is organized on a membership basis may bring an action in the circuit court of the county in which the principal place of business or registered office of the corporation is located to establish that the acts of the directors, shareholders, members, or others in control of the corporation are illegal, fraudulent, or willfully unfair and oppressive to the corporation or to the director, member, or shareholder. If the director, member, or shareholder establishes grounds for relief, the circuit court may make an order or grant relief as it considers appropriate including, but not limited to, an order that provides for any of the following:

---

[3] Plaintiff cites MCL 450.2541 in the text of Issue III in the list of issues he presents in his brief but not in the discussion of that issue. MCL 450.2541 concerns the duties and obligations of directors and officers of a corporation and is not applicable to the receiver or the trial court.

(a) The dissolution and liquidation of the assets and affairs of the corporation.

(b) The cancellation or alteration of a provision contained in the articles of incorporation, an amendment of the articles of incorporation, or the bylaws of the corporation.

(c) The cancellation of, alteration of, or an injunction against a resolution or other act of the corporation.

(d) The direction or prohibition of an act of the corporation or of shareholders, members, directors, officers, or other persons that are parties to the action.

* * *

(f) An award of damages to the corporation or a shareholder or member . . . .

(2) As used in this section, "willfully unfair and oppressive conduct" with respect to a member or shareholder means a continuing course of conduct or a significant action or series of actions that substantially interferes with the rights or interests of the member or shareholder as a member or shareholder. The term does not include conduct or actions that are permitted by an agreement, the articles of incorporation, the bylaws, or a consistently applied written corporate policy or procedure.

Under MCL 450.2489, the court was authorized to cancel or alter the corporate bylaws and was not bound by them as the board of directors would be. Given this authority, and because MCL 600.2926 provides that the court defines the receiver's power and duties, we reject plaintiff's argument that the receiver steps into the shoes of the corporate board and can only do what the board could do. Although the board is bound by the condominium documents, from which it derives its power, the receiver's power stems from the circuit court order appointing him, and he is an agent of the court and not bound by the bylaws. The court had full authority to define the powers and duties of the receiver in the appointment order. MCL 600.2926. The court, acting in equity, had authority to look at the whole situation and grant or deny relief "as good conscience dictates." *Mich Nat'l Bank & Trust Co*, 194 Mich App at 410 (quotation marks omitted).

We likewise reject plaintiff's argument that the trial court erred by relying on MCL 450.2489 to reassess HPA members without first finding shareholder oppression. In its May 5, 2016 opinion and order, the court found that there was "no genuine issue of material fact as to whether defendants breached the director meeting notice provisions contained in the bylaws" and plaintiff was "entitled to the requested declaratory judgment and a permanent injunction relative to the actions taken at the December 7, 2014 meetings and December 22, 2014 meetings." Plainly, the court believed that plaintiff had established grounds for relief in the initial order and found the individual defendants had engaged in "a significant action or series of actions that substantially interferes with the rights or interests of the member or shareholder [plaintiff] as a member or shareholder." MCL 450.2489(2). Thus, there was a finding of shareholder oppression, and the

court was authorized under MCL 450.2489(1) to grant relief as it considered appropriate, including alteration of the bylaws.

Accordingly, the trial court did not err by granting broad powers to the receiver, including the authority to make assessments against the co-owners and retaining the Makower law firm. The trial court's power was not bound by the HPA bylaws in this equitable action brought by plaintiff.

## V. CONFLICT OF INTEREST

Plaintiff argues that the trial court erred by refusing to disqualify the Makower firm from representing HPA. He contends that because he requested damages only from the individual defendants, and not from HPA, the interests of the individual defendants and the HPA were adverse. We disagree.

## A. STANDARD OF REVIEW

Appellate courts review a decision on a motion to disqualify an attorney under an abuse of discretion standard. See *People v Doyle*, 159 Mich App 632, 640-641; 406 NW2d 893 (1987). The conclusion regarding whether a conflict exists is a question of fact and reviewed under the clearly erroneous standard. *Id.*

## B. ANALYSIS

The Makower law firm was initially retained by HPA at the August 17, 2015 board meeting to handle dues collection and the 2016 assessment of the HPA co-owners. Plaintiff moved for summary disposition with regard to actions taken at that meeting, contending that he did not receive proper notice, rendering the actions void. On July 11, 2017, plaintiff again moved to disqualify the Makower law firm from its representation of both HPA and the individual defendants. The trial court entered an opinion and order on August 14, 2017, denying plaintiff's motion. With regard to plaintiff's arguments that defendants' hiring of Makower at an improperly noticed meeting was invalid, the court noted that, although the board's ability to hire Makower was contested, the receiver had subsequently and independently retained Makower pursuant to the court's September 1, 2016 SCO. Therefore, Makower's fees after September 1, 2016, were properly assessed against HPA. With regard to plaintiff's argument that Makower's representation of both the individual defendants and HPA creates a conflict of interest under MRPC 1.7 and 1.13, the trial court noted that MRPC 1.0(b) precludes a cause of action for enforcement of the rules. The individual defendants had "a commonality of interest" with HPA as HPA's liability in plaintiff's action was dependent on the actions of the individual defendants when they comprised a majority on the board of directors.

We find no error in the trial court's ruling. MRPC 1.7 provides, in relevant part:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implication of the common representation and the advantages and risks involved.

MRPC 1.13(e) provides in pertinent part that "[a] lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders, or other constituents, subject to the provisions of Rule 1.7."

There is no evidence that Makower's representation of the individual defendants was "directly adverse" to HPA, or that the representation of either HPA or the individual defendants was "materially limited" by the dual representation. Plaintiff argues that he did not seek any damages from HPA, only from the individual defendants, and accordingly, there was not a commonality of interest between the individual defendants and HPA. However, under Article XVII of the HPA bylaws, "[e]very director and officer of the Association shall be indemnified by the Association against all expenses and liabilities, including actual and reasonable counsel fees . . . incurred by or imposed upon him in connection with any threatened, pending or completed action . . . to which he may be a party or in which he may become involved by reason of his being or having been a director or officer of the Association[.]" Therefore, HPA was responsible for the individual defendants' attorney fees and litigation expenses. Thus, it was in HPA's best interests to ensure that they were well represented and less costly for the HPA co-owners to have the same lawyers provide representation for all four of the defendants.

Plaintiff has not shown that the trial court clearly erred by failing to disqualify the Makower firm on the basis of a conflict of interest in the dual representation.

## VI. DERIVATIVE LITIGATION

Plaintiff asserts that the trial court did not appoint a panel of disinterested individuals under MCL 450.2495 to determine whether maintenance of plaintiff's derivative claims was in the best interests of HPA and properly accepted the panel's recommendation and dismissed plaintiff's derivative claims. We disagree.

## A. STANDARD OF REVIEW

Whether a grant of equitable relief is proper under a given set of facts is a question of law we review de novo. *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 371; 761 NW2d 353 (2008). However, findings of fact by the trial court may not be set aside unless clearly erroneous. MCR 2.613(C). In the application of this principle, regard shall be given

to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it. *Id.*

## B. ANALYSIS

MCL 450.2492a provides:

A shareholder or member may not commence or maintain a derivative proceeding unless the shareholder or member meets all of the following criteria:

(a) The shareholder or member was a shareholder or member of the corporation at the time of the act or omission complained of or became a shareholder or member through a permitted transfer by operation of law from a person that was a shareholder or member at that time.

(b) The shareholder or member fairly and adequately represents the interests of the corporation in enforcing the right of the corporation.

(c) The shareholder or member continues to be a shareholder or member until the time of judgment, unless the failure to continue to be a shareholder or member is the result of corporate action in which the former shareholder or member did not acquiesce and the derivative proceeding was commenced before the termination of the former shareholder's or member's status as a shareholder or member.

MCL 450.2495 provides:

(1) On a motion by the corporation in a derivative proceeding, the court shall dismiss the proceeding if the court finds that 1 of the groups specified in subsection (2) has made a determination in good faith after conducting a reasonable investigation on which its conclusions are based, that the maintenance of the derivative proceeding is not in the best interests of the corporation. If the determination is made under subsection (2)(a) or (b), the corporation has the burden of proving the good faith of the group making the determination and the reasonableness of the investigation. If the determination is made under subsection (2)(c) or (d), the plaintiff has the burden of proving that the determination was not made in good faith or that the investigation was not reasonable.

(2) A determination under subsection (1) may be made by any 1 of the following:

(a) By a majority vote of the disinterested directors, if the disinterested directors constitute a quorum at a meeting of the board.

(b) By a majority vote of a committee that consists of 2 or more disinterested directors appointed by a majority vote of disinterested directors present at a meeting of the board, whether or not the disinterested directors constitute a quorum at the meeting.

(c) By a panel of 1 or more disinterested individuals who are appointed by the court on a motion by the corporation.

(d) By all disinterested directors.

Plaintiff argued in the trial court that these provisions of the Nonprofit Corporation Act were enacted on January 15, 2015, long after HPA's articles of incorporation were filed on May 22, 2001, and after some of the challenged events in his derivative claims occurred. HPA was incorporated under the predecessor act. However, MCL 450.2121(1)(a), which denotes the entities to which the amended act applies, provides that the amendments apply to "[e]very domestic corporation formed under this act or under a predecessor act, for a purpose or purposes for which a corporation might be formed under this act." MCL 450.2121(2) provides that "[a] corporation formed under or subject to a predecessor act is subject to this act except to the extent that this act conflicts with the articles and bylaws of the corporation lawfully made under the predecessor act." Therefore, as the trial court found, the derivative proceeding brought by plaintiff was subject to the amended provisions of the Nonprofit Corporation Act, unless the amendments conflicted with HPA's articles or bylaws.

Plaintiff argued that MCL 450.2492a was in conflict with Article XIII of the bylaws, which provides, in pertinent part:

Failure to comply with any of the terms or provisions of the Condominium Documents shall be grounds for relief, which may include . . . injunctive relief . . . [and] may be sought by the Association or, if appropriate, by an aggrieved Co-owner or Co-owners . . . . A Co-owner may maintain an action against the Association and its officers and directors to compel such persons to enforce the terms and provisions of the Condominium Documents.

We conclude that trial court correctly found no conflict between the statute and Article XIII of the bylaws. As the trial court determined, "a co-owner commencing a derivative action necessarily represents the interests of the corporation, and a requirement that the co-owner do so fairly and adequately does not conflict" with Article XIII of the bylaws. The court further found that the requirement that the member bringing the derivative action be a member at the time of the challenged act through the time judgment is rendered merely clarifies the required period of membership and does not conflict with the bylaws.

The trial court ordered each party to nominate one individual to serve on the panel and to agree on a third individual. The court indicated that if the parties could not agree on a third member, the court would select an individual to serve. Because the parties could not agree, the court later selected the third member. The panel issued a report on May 5, 2017, in which the members unanimously recommended that "continued maintenance of the derivative proceeding that is part of this action is NOT in the best interests of the corporation." Following defendant HPA's motion to affirm the panel's report, the court determined that "the derivative proceeding is properly dismissed unless plaintiff establishes the panel's determination was not made in good faith or the panel conducted an unreasonable investigation. MCL 450.2495(1)." The court summarized the panel's investigation and essentially concluded that, because all of the derivative

-28-

claims had been resolved, the panel could determine in good faith that the continuation of the derivative action was not in the HPA's best interests.

Based on our careful review, we conclude that the trial court properly followed the statutes and did not err by dismissing plaintiff's derivative litigation.[4]

Affirmed.

/s/ Anica Letica
/s/ Cynthia Diane Stephens
/s/ Colleen A. O'Brien

---

[4] As we find no error in the trial court's rulings, we decline to address defendants' argument regarding the applicability of the doctrine of unclean hands.